No. 83-283

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN AREND PURDIE,

Defendant and Appellant.

_____

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable James M. Salansky, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Terry A. Wallace argued, Missoula, Montana


        For Respondent:

            Mike Greely, Attorney General, Helena, Montana
            Robert F. W. Smith argued, Asst. Atty. General,
            Helena, Montana
            Ted O. Lympus, County Attorney, Kalispell, Montana


                                    Submitted:   January 9, 1984

                                      Decided:   April 30, 1984


Filed:    APR 30 1984

                        _Ethel M. Harrison_
                    _____
                                  Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant, John Purdie, appeals from a judgment entered by a jury verdict, Eleventh Judicial District, Flathead County, conviction of driving under the influence, third offense. We affirm.

On August 11, 1982, appellant flew from Denver, Colorado, to Kalispell, Montana. He admitted consuming some alcohol that evening on the plane and also in a local tavern. On his way home, he drove past a vehicular accident that occurred west of Whitefish, Montana. At the accident site, officer Bergstrom motioned for him to stop as part of the traffic control. Bergstrom talked briefly with appellant and smelled alcohol as they spoke. Bergstrom observed him drive erratically from the accident scene. Bergstrom pursued and stopped him a short distance from his home, whereupon appellant exclaimed "Thanks alot guys. I was almost home." Bergstrom then requested that he get out of the car and perform some field sobriety tests. He showed a lack of coordination during the tests. Bergstrom arrested appellant for driving under the influence. He failed to give any "Miranda warnings." Subsequently, appellant refused to give any blood alcohol or breath tests.

Prior to trial, appellant made motions to suppress certain evidence. The court suppressed the statements made following his arrest, but ruled admissible the results of the field sobriety test, a handwriting specimen and the opinions and observations made by law enforcement officers regarding appellant's sobriety.

At trial, in chambers, at the conclusion of all of the

testimony and following the settling of the jury instructions, the State requested permission to mention in closing arguments a comment that no breath test existed. The State explained its action as follows:

> "I intend in my closing argument to briefly mention the fact that we do not have a breath test, and I intend to do it in such a way that I am not either expressly or impliedly indicating that a breath test was offered and refused. My statement would be something to the effect that it would make the jurors' job easier if we had a breath test and further that we don't need a breath test."

The appellant strenuously objected to this comment, by claiming this violated the rule of State v. Jackson (1981), 195 Mont. 185, 637 P.2d 1, and that it reflected a commentary on matters not brought into the evidence. The court ruled in favor of the State.

The jury found appellant guilty of driving under the influence from which he appeals. He raises two issues in this appeal:

(1) Did the court err in admitting the results of the field sobriety test; and

(2) did the court err in permitting the State to mention that no breath test existed?

Appellant first contends that the field sobriety test constitutes a search and is thereby controlled by the Fourth Amendment to the United States Constitution and Article II, section 11 of the Montana Constitution. He contends the police conducted a warrantless search. The search failed to fall into the exceptions, emergency search or consent search. Therefore, the field sobriety test results should have been excluded from evidence because it was evidence

from an illegal search. We disagree.

In State v. Williams (1969), 153 Mont. 262, 269, 455 P.2d 634, 638, this Court stated: "[a] 'search' in its 4th Amendment sense simply denotes (1) a quest by an officer of the law . . . (2) with an intention of find . . . (3) which invades a constitutionally protected area." (Citations omitted.)

Section 46-5-101, MCA, implies that a search is an intrusion upon a person, an object or a place for obtaining evidence. The constitution's protection against unreasonable searches safeguards a person's reasonable expectations of privacy. Katz v. U.S. (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. But a mere observation does not constitute a search, Haerr v. U.S. (5th Cir. 1957), 240 F.2d 533. We hold that this field sobriety test failed to constitute a search protected by either the federal or Montana Constitutions. The officer merely observed appellant's behavior which hardly amounts to an intrusion into his reasonable expectation of privacy. If observed behavior occurs in a place where the defendant knowingly exposes it, then no Fourth Amendment violation occurs.

The United States Supreme Court in United States v. Dionisio (1973), 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67, found no Fourth Amendment violation with compelled voice samples for grand jury investigative purposes. In United States v. Mara (1973), 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99, the Court also found handwriting samples subpoenaed for a grand jury not within the Fourth Amendment constraints. The Court reasoned by stating the following in these companion cases:

"Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice." Mara, 410 U.S. at 21, 93 S.Ct. at 776, 35 L.Ed.2d at 103.

The appellant in the instant case, upon request, demonstrated his coordination abilities in the field sobriety test. He demonstrated to the police officer his lack of sobriety. He certainly lacked any reasonable expectation of privacy of his physical behavior.

Appellant argues that the field sobriety test is no different then a blood alcohol test. He further claims the arresting officer must inform him of his right to refuse to take the field sobriety test. In Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the United States Supreme Court permitted a blood alcohol test, reasoning that no violation of the Fourth Amendment occurred. "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." 384 U.S. at 768, 86 S.Ct. at 1834, 16 L.Ed. 2d at 918. The Court went on to find a search incident to arrest and any delay of the extraction of blood for testing would result in the destruction of evidence.

We reject appellant's claim that he was entitled to be informed that he could refuse to take the field sobriety test. The Colorado Supreme Court in People v. Helm (Colo. 1981), 633 P.2d 1071, said it was not necessary to warn persons of their right to refuse field sobriety tests. That court found no Fourth Amendment violation in a field

sobriety test because the defendant consented to the search. It went on to say:

> "Miranda warnings are not required before the administration of a roadside sobriety test . . . Custody alone does not render consent involuntary . . . Intoxication, although a factor to be considered, is not determinative of the voluntariness of a consent to search." (Citations omitted.) 633 P.2d at 1077.

Appellant next argues the court erred in permitting the State to mention in its closing argument that no breathalizer test existed. He relies on State v. Jackson (1981), 195 Mont. 185, 637 P.2d 1. We overruled the first Jackson case in State v. Jackson (Mont. 1983), 672 P.2d 255, 40 St.Rep. 1698. This Court permits evidence of the lack of a breathalizer test.

Appellant strenuously argues that the court erred by permitting the State to discuss evidence in their closing argument not brought into evidence. Appellant cites numerous cases for support of his position.

Here the comment was approved by the trial judge, and we fail to find reversible error. In the closing statement the State said:

> "Now, I would like to make a prediction. I predict that you will retire to your jury room after Mr. Wallace and I are done talking here and you will sit down and somebody is going to say, 'Well, what about a breath test?' Well, ladies and gentlemen, it would be nice to have a breath test, and it would help you out as jurors if we had a breath test. But the fact is, we don't have a breath test, and the further fact is we don't need a breath test.
>
> " . . .
>
> " . . . What I am getting at, don't spin your wheels, waste a lot of time worrying about what isn't before you as evidence. You have got plenty of evidence to decide

-6-

this case."

The State mentioned the lack of a breath test in a limited fashion. However, we fail to find that this prejudiced this case so as to result in reversible error.

We hereby affirm the District Court.

_John Conway Harrison_
Justice

We concur:

_Frank I. Haswell_
Chief Justice

_John C. Sheehy_

_L. C. Gulbrandson_

_Gene B. Daly_

_Fred J. Weber_
Justices

Mr. Justice Daniel J. Shea will file a written dissent at a later time.

DISSENT OF MR. JUSTICE DANIEL J. SHEA

No. 83-283

STATE OF MONTANA,

 Plaintiff and Respondent,

  vs.

JOHN AREND PURDIE,

 Defendant and Appellant.

FILED

JAN 6 - 1985

*Ethel M. Harrison*
CLERK OF SUPREME COURT
STATE OF MONTANA

DATED:   January 6, 1985

Mr. Justice Daniel J. Shea, dissenting:

I dissent. It was reversible error for the prosecutor to be allowed to comment on the lack of a breathalyzer test to be introduced as evidence against Purdie. If as he stated, the State does not have a breathalyzer test and does not need a breathalyzer test, there was no need to mention this non-evidence to the jury.

State v. Jackson (Mont. 1983), 672 P.2d 255, 40 St.Rep. 1698 can be distinguished. In that case (Jackson II), evidence of defendant's refusal to submit to a breathalyzer test was held admissible under § 61-8-404, MCA.

But here, the prosecutor expressly stated:

"I intend to . . . (mention the fact we do not have a breath test) . . . in such a way that I am not either expressly or impliedly indicating that a breath test was official and refused."

In Jackson II, evidence of his refusal to take the test was admitted. But here, the prosecutor conceded he was not offering the evidence to show that Purdie had expressly or impliedly refused a breath test. Clearly, under this circumstance, evidence of the lack of a breath test is not evidence of a refusal. Yet, the prosecutor planted the seed in the jurors' minds. Absent evidence to the contrary, we should presume this prejudicial comment had the desired effect of engendering the jurors' belief that defendant had indeed refused a breathalyzer test.

I would vacate the judgment and grant a new trial.

　　　　　　　　　　　　　　　　　Daniel J. Shea
　　　　　　　　　　　　　　　　　　　Justice