No. 97-079

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 114

STATE OF MONTANA,

Plaintiff and Respondent,

v.

BRYAN
STEINMETZ,

Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brad Arndorfer, Arndorfer Law Firm, Billings, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Tammy K. Plubell,
Assistant Attorney General, Helena, Montana; Rick Helm, Deputy
Yellowstone County Attorney,Billings, Montana

Submitted on Briefs: December 4, 1997

Decided: May 5, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Defendant Bryan Steinmetz (Steinmetz), after pleading guilty to the charge of driving under the influence of alcohol in violation of § 61-8-401, MCA, appeals from the Findings of Fact, Conclusions of Law and Order of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to suppress evidence of his field sobriety test results.  We affirm in part and remand for further proceedings consistent with this Opinion.

¶2    The sole issue raised on appeal is whether the District Court properly denied Steinmetz's motion to suppress evidence of his field sobriety tests the State administered at the investigative stop and on videotape at the detention facility subsequent to Steinmetz's arrest.

FACTUAL AND PROCEDURAL BACKGROUND

¶3    On February 13, 1996, at approximately 1:50 a.m., Deputy Bill Michaelis of the Yellowstone County Sheriff's Department was on duty and observed Steinmetz's vehicle traveling with an inoperable left, rear taillight. Deputy Michaelis initiated a traffic stop, approached Steinmetz, informed him of the reason for the stop, and asked him to produce his driver's license, registration and proof of insurance.  Deputy Michaelis testified that he initially intended to issue Steinmetz a warning, but upon further observation, he asked Steinmetz to step out of his vehicle to perform a series of field sobriety tests including the Horizontal Gaze Nystagmus (HGN), walk-and-turn, and recitation of the alphabet.  After Steinmetz performed the field sobriety tests, Deputy Michaelis arrested him for driving under the influence of alcohol (DUI) in violation of § 61-8-401, MCA, and transported him to the Yellowstone County Detention Facility in Billings, Montana.

¶4    Once at the detention facility, Deputy Michaelis videotaped the following investigative process.  Deputy Michaelis began by reading Montana's Implied Consent Law to Steinmetz who thereafter refused to submit to a breath test.  Subsequently, Deputy Michaelis initiated field sobriety testing with the administration of the HGN, walk-and-turn, one-legged stand, and alphabet recitation.  Upon completion of the field sobriety tests, Deputy Michaelis read Steinmetz his Miranda rights to which Steinmetz responded affirmatively that he understood his rights and he indicated that he would talk to Deputy Michaelis without his attorney present.  After Steinmetz cooperatively answered all of Deputy Michaelis's questions, Deputy Michaelis suspended Steinmetz's driver's license and issued him a 72-hour driving permit.  In doing so, Deputy Michaelis explained the purpose of the temporary driving permit and made sure that Steinmetz had a ride home.

¶5    On February 23, 1996, Steinmetz pleaded not guilty to the charges of DUI brought against him in Justice Court.  On April 17, 1996, Steinmetz filed a motion to suppress evidence of his field sobriety test results arguing that Deputy Michaelis coerced him into performing the field sobriety tests and that

his recitation of the alphabet and counting during the field sobriety tests was testimonial and violated his right against self-incrimination. After receiving the State's brief in opposition and conducting a hearing, the Justice Court denied Steinmetz's motion to suppress on June 18, 1996. On July 11, 1996, a jury convicted Steinmetz of DUI.

¶6    On July 16, 1996, Steinmetz filed a notice of appeal and requested a trial de novo in the Thirteenth Judicial District Court, Yellowstone County. Thereafter, on November 22, 1996, he renewed his motion to suppress and submitted a brief in support of his motion. The State again filed a brief in opposition on December 5, 1996, and on December 12, 1996, the District Court conducted a hearing on the motion. On December 16, 1996, the District Court entered Findings of Fact, Conclusions of Law and an Order denying Steinmetz's motion to suppress evidence of his field sobriety test results. In denying Steinmetz's motion, the court concluded that Steinmetz was not entitled to be informed that he could refuse to perform field sobriety tests; that field sobriety tests are not searches protected by the federal or Montana constitutions; and that neither counting during the walk-and-turn test nor reciting the alphabet is testimonial in nature, and, thus, is not protected by the Fifth Amendment to the United States Constitution or by the Montana Constitution.

¶7    Subsequently, on December 20, 1996, Steinmetz changed his plea to guilty and the District Court sentenced him to ten days in the Yellowstone County Detention Facility, with nine days suspended based on certain conditions. However, the District Court stayed execution of this sentence pending appeal. Steinmetz appeals from the District Court's denial of his motion to suppress and from his judgment and sentence.

DISCUSSION

¶8    On appeal, Steinmetz argues that the District Court erred when it denied his motion to suppress. However, he explains that he is not appealing the District Court's conclusion that counting during the walk-and-turn test and recitation of the alphabet are not testimonial in nature, and, thus, are not protected by the Fifth Amendment to the United States Constitution or by the Montana Constitution. Rather, relying on State v. Nagel (Or. 1994), 880 P.2d 451 and State v. Maddux (Or.App. 1996), 925 P.2d 124, Steinmetz asserts that field sobriety tests do constitute a search protected by the Montana and federal constitutions. In this regard, he suggests that we should clarify our decision in State v. Purdie (1984), 209 Mont. 352, 680 P.2d 576, to explain that the issue in Purdie did not concern whether field sobriety tests constitute a search, but, rather, whether there must be an exception to the warrant requirement, such as consent. In this regard, Steinmetz maintains that he was coerced into performing field sobriety tests during his initial stop and at the detention facility due to both Deputy Michaelis's failure to inform him of his right to refuse and his "demands" that Steinmetz perform the tests.

¶9    The State responds that under Purdie the District Court correctly concluded that field sobriety tests do not constitute a search protected by the Montana and United States Constitutions. In the alternative, the State argues

that if this Court overrules Purdie, as Steinmetz suggests, we should adopt particularized suspicion, not probable cause, as the appropriate standard for permissible administration of field sobriety tests, as other jurisdictions have done including the Arizona Supreme Court in State v. Superior Court (Ariz. 1986), 718 P.2d 171. Further, the State asserts that Deputy Michaelis did not coerce Steinmetz into performing field sobriety tests either during the investigative stop or at the detention facility. Consequently, the State contends that we should affirm the District Court's denial of Steinmetz's motion to suppress evidence of his field sobriety test results.

¶10  We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. State v. Widenhofer (Mont. 1997), 950 P.2d 1383, 1386, 54 St.Rep. 1438, 1440 (citations omitted). Further, we will uphold the decision of a district court, if correct, regardless of the court's reasoning for its decision. Hagan v. State (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387 (citations omitted). In the case at bar, Steinmetz does not argue that the District Court's findings of fact are clearly erroneous. Rather, Steinmetz argues that the District Court incorrectly applied its findings of fact as a matter of law. After this appeal was submitted on briefs, we decided the case of Hulse v. State, 1998 MT 108. Because we give retroactive effect to judicial decisions, Hulse is applicable in the case sub judice although it was not available to the District Court at the time it ruled on Steinmetz's motion to suppress. Kleinhesselink v. Chevron, U.S.A. (1996), 277 Mont. 158, 162, 920 P.2d 108, 111 (citing Porter v. Galarneau (1996), 275 Mont. 174, 185, 911 P.2d 1143, 1150).

¶11  In Hulse, we addressed the issue of whether the district court erred when it denied Hulse's petition to reinstate her driver's license after she had been arrested for DUI and refused to submit to a breath test. Hulse, ¶ 16. In part, Hulse argued that the field sobriety tests she performed constituted a search within the meaning of both Article II, Section 11 of the Montana Constitution and the Fourth Amendment to the United States Constitution, and, thereby, implicated her individual right to privacy under Article II, Section 10 of the Montana Constitution. As such, Hulse asserted that this warrantless search must be supported by probable cause and exigent circumstances to be constitutionally valid. Hulse, ¶ 19. Hulse maintained that her right to be free from unreasonable searches and seizures was violated because her arresting officer lacked probable cause to administer the field sobriety tests, and, consequently, lacked probable cause to arrest her. Hulse, ¶ 19.

¶12  Relying on Nagel, 880 P.2d 451, People v. Carlson (Colo. 1984), 677 P.2d 310, and State v. Nelson (1997), 283 Mont. 231, 941 P.2d 441, we overruled our holding in Purdie that field sobriety tests are "merely observations" of a person's physical behavior, and held that field sobriety tests constitute a search under the Fourth Amendment to the United States Constitution, and independently of the federal constitution, under Article II, Section 11 of the Montana Constitution. Hulse, ¶¶ 32-33. However, we adopted the rationale of the Arizona Supreme Court's decision in Superior

Court, 718 P.2d 171 (relying on Terry v. Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911), to hold that while field sobriety tests do constitute a search, to be constitutionally valid, these tests, like an investigative "Terry" stop, must be based upon particularized suspicion, not probable cause. Hulse, ¶¶ 36-38.

¶13 Additionally, we explained that, in certain instances, particularized suspicion for the initial stop may also serve as the necessary particularized suspicion for the administration of field sobriety tests, if the basis for the initial stop was such to lead an officer to believe that the driver was intoxicated. Hulse, ¶ 39. On the other hand, we also recognized that an investigative stop can take on the quality of an escalating situation:

As the Appellate Court of Connecticut explained:

Once a lawful stop is made, a police officer's suspicions may become further aroused and the stop may become further prolonged and the scope enlarged as required by the circumstances, provided the scope of the investigation remains within the limits created by the facts upon which the stop is predicated and the suspicion which they arouse.

Lamme, 563 A.2d at 1374 (citing Terry, 392 U.S. at 21-22, 29, 88 S.Ct. at 1879-81, 1883-84, 20 L.Ed.2d 889). For example, if an officer only observed an individual driving with a broken taillight and after making his initial stop he did not observe any signs of intoxication, he would not have particularized suspicion that the driver was driving under the influence, and, therefore, would be prohibited from administering field sobriety tests. By contrast, if an officer stops a driver for a broken taillight and upon approaching this driver the officer does observe signs of intoxication, e.g., the driver's breath smells of alcohol, his eyes are bloodshot and glassy, or his speech is slurred, the officer would have a separate particularized suspicion that the individual was driving under the influence of alcohol, and, therefore, may administer field sobriety tests. If the driver should fail the field sobriety tests, the officer would then have probable cause to arrest this individual for driving under the influence of alcohol.

Hulse, ¶ 40.

¶14 Here, like the previously referenced example in Hulse, Deputy Michaelis stopped Steinmetz for driving with an inoperable, rear taillight. However, based upon further observation of Steinmetz, Deputy Michaelis asked Steinmetz to step out of his vehicle and initiated a series of field sobriety tests. Pursuant to our decision in Hulse, for these field sobriety tests to be a constitutionally permissible search, Deputy Michaelis must have had a separate particularized suspicion that Steinmetz was driving under the influence of alcohol. Hulse, ¶ 40.

¶15 However, we cannot address the constitutional validity of these field sobriety tests because Deputy Michaelis's testimony during the suppression hearing was limited primarily to questions concerning whether he "coerced" Steinmetz into performing the field sobriety tests; he never testified as to what objective data established his resulting suspicion that Steinmetz was driving under the influence of alcohol. See Hulse, ¶¶ 41-42. Therefore, in light of our decision in Hulse, we remand to the District Court with instructions that it hold a hearing and determine whether Deputy Michaelis had a separate particularized suspicion that Steinmetz was driving while under the influence of alcohol before or as a result of his investigative stop for the inoperable taillight.

¶16 If the District Court finds that Deputy Michaelis had a separate particularized suspicion that Steinmetz was driving while under the influence of alcohol, the issue of whether Deputy Michaelis "coerced" Steinmetz to perform the tests by "commanding" rather than "asking" him to perform the tests is immaterial. That is, if Deputy Michaelis had this separate particularized suspicion, then his administration of the field sobriety tests during the initial stop was constitutionally valid. As such, his lawful request for and administration of these tests cannot, without more, be characterized as "coercion."

¶17 Further, if the District Court finds that Deputy Michaelis had particularized suspicion to administer field sobriety tests during his investigative stop of Steinmetz, and, thereby, established probable cause to validly arrest Steinmetz for DUI, we conclude that Deputy Michaelis's administration of field sobriety tests on Steinmetz at the detention facility was also a constitutionally permissible search. Having already arrested Steinmetz, Deputy Michaelis's administration of the tests at the detention facility was supported by probable cause, a more stringent standard than particularized suspicion. Again, as such, his lawful request for and administration of these tests cannot, without more, be characterized as "coercion."

¶18 As to the "without more" caveats of the preceding two paragraphs, nothing in the record demonstrates that Deputy Michaelis otherwise coerced Steinmetz into performing the field sobriety tests. To determine whether Steinmetz was coerced, we look to the totality of the circumstances. State v. Rushton (1994), 264 Mont. 248, 258, 870 P.2d 1355, 1361 (citing Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854). An accused's knowledge of the right to refuse a search is only one factor to consider and is not determinative of voluntariness. Rushton, 264 Mont. at 258, 870 P.2d at 1361 (citing Schneckloth, 412 U.S. at 248-49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875). However, "[t]he police do not have to warn a person of the right to withhold consent." State v. Ellinger (1986), 223 Mont. 349, 354, 725 P.2d 1201, 1204 (citing Schneckloth, 412 U.S. at 227, 93 S.Ct. at 2048, 36 L.Ed.2d at 863). After reviewing the suppression hearing testimony of both Deputy Michaelis and Steinmetz concerning the initial stop as well as the videotape of the investigative process conducted at the detention facility, we see no evidence that Deputy Michaelis coerced Steinmetz into performing the field sobriety tests. Whether Deputy Michaelis asked or told Steinmetz to

perform the tests, there is no evidence that Steinmetz's "will ha[d] been overborne and his capacity for self-determination critically impaired. . . ." Schneckloth, 412 U.S. at 225, 93 S.Ct. at 2047, 36 L.Ed.2d at 862.

¶19    Accordingly, we affirm the District Court's denial of Steinmetz's motion to suppress on the basis of the court's rejection of Steinmetz's argument that Deputy Michaelis coerced him into performing any of the field sobriety tests.  However, in light of our decision in Hulse that field sobriety tests do constitute a search, we remand to the District Court the issue of whether the field sobriety tests that Deputy Michaelis administered during his investigative stop of Steinmetz for an inoperable taillight were based on a separate particularized suspicion that Steinmetz was driving while under the influence of alcohol.

¶20  Affirmed in part and remanded for further proceedings consistent with this Opinion.


                              /S/   JAMES C. NELSON


We Concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  WILLIAM E. HUNT, SR.
/S/  TERRY N. TRIEWEILER