No. 86-380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

MICHAEL RILEY,

        Plaintiff and Respondent,

-vs-

WARM SPRINGS STATE HOSPITAL,
DEPARTMENT OF INSTITUTIONS, STATE
OF MONTANA, and THE INDEPENDENT
UNION OF THE WARM SPRINGS STATE
HOSPITAL,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Mark Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Karl Nagel argued, Special Asst. Attorney General for
The Dept. of Institutions, Helena, Montana

    For Respondent:

        Johnson, Skakles & Kebe; Greg. J. Skakles argued,
Anaconda, Montana

---

Submitted: November 10, 1987

Decided: December 30, 1987

Filed: DEC 30 1987

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

In July 1979, Mr. Riley was fired from his position as a psychiatric aide at Warm Springs State Hospital (Hospital). He brought this suit against the Hospital, and against his union for failure to adequately represent him. His primary contention against the Hospital at trial was that the Hospital had violated the covenant of good faith and fair dealing in employment. The jury in the District Court for the Third Judicial District, Deer Lodge County, awarded Mr. Riley a judgment of $18,343 against the defendants. The Hospital appeals and Mr. Riley cross-appeals. We vacate the judgment against the Hospital and remand to District Court.

One issue decides this appeal: Did the District Court err in determining that an implied covenant of good faith and fair dealing existed in the employment contract between the Hospital and its union employee Mr. Riley?

Mr. Riley worked at the Hospital during several summers and one Christmas vacation while he was in high school and college. In May 1979, he again took an aide position there. He was on 6-month probationary status, in a pool of temporary employees with no permanent assignment. He normally worked graveyard shift in the forensic unit, but on the night of July 14, 1979, he was assigned to the children's unit. He was not happy with his assignment and sat in a chair in a darkened room most of the night. He said his allergies were bothering him. His co-workers say he was sleeping on the job.

Mr. Riley worked the four following nights, then was off two nights. He did not return to work after his two nights off because he received a phone message through his sister that his employment had been terminated. Following the phone

2

call, he received a registered letter advising him of the termination.

Mr. Riley's union had negotiated a collective bargaining agreement which provided at Article 3, Section 3 that:

> At any time during the probationary period, the employee may be terminated. Should the Union believe the dismissal was in fact discriminatory or capricious, a hearing shall be held with the Hospital Administrator and he/she shall render a decision thereon. The decision of the Hospital Administrator may be a subject for grievance in accordance with the grievance proceedings provided in this Agreement.

The extensive grievance procedure as described at Article 13 culminates in a decision by an arbiter which "shall be final and binding".

Mr. Riley contacted his union representative, who at first told Mr. Riley that his time for filing a grievance had expired. Mr. Riley then asked for and was granted a meeting of his union, himself, and Hospital management. The union's president and one of its directors attended the meeting. At the meeting, the Hospital justified the four day delay in the notice to Mr. Riley of his termination as time necessary to get signed statements from Mr. Riley's co-workers. The severe penalty of termination of employment was explained as a result of the combination of Mr. Riley's prior record of excessive absenteeism and his sleeping on the job. The union officers who were present at the meeting testified at trial that they concluded the termination was justified. After the meeting, Mr. Riley was advised that his termination was final.

Mr. Riley filed this suit in March 1980, and trial was finally held in February 1986. In separate verdicts, the

jury awarded Mr. Riley damages of $18,343 from the Hospital and from the union. The union did not appeal.

Did the District Court err in determining that an implied covenant of good faith and fair dealing existed in the employment contract between the Hospital and its union employee Mr. Riley?

Mr. Riley argues that the Hospital has waived this argument by proposing jury instructions on the covenant of good faith and fair dealing at the time instructions were settled. However, the record shows that the Hospital raised the issue of whether the covenant was applicable prior to trial, in a motion for summary judgment. The court denied that motion while jury instructions were being settled, when it accepted Mr. Riley's first proposed instruction on the covenant. At that point, the Hospital was entitled to present its own proposed instructions on the covenant, having made its objection to the covenant's application in this case.

The implied covenant of good faith and fair dealing in employment was first recognized in Montana in Gates v. Life of Montana Ins. Co. (1982), 196 Mont. 178, 638 P.2d 1063, rev'd on other grounds after remand, 205 Mont. 304, 668 P.2d 213. Mr. Riley's claim against the Hospital is based on the law articulated in that case and those cases founded on Gates. The Hospital objects to application of the covenant to a termination which occurred three years before the Gates decision. It asserts that Gates should not be retroactively applied to this case.

In December 1986 this Court ruled that a claim for violation of the implied covenant of good faith and fair dealing was barred where the plaintiff was covered by a collective bargaining agreement. Brinkman v. State (Mont.

4

1986), 729 P.2d 1301, 43 St.Rep. 2163. Mr. Riley argues that Brinkman should not be retroactively applied.

Three factors are considered before adopting a rule of nonretroactive application of a judicial decision. Jensen v. State, Dept. of Labor and Industry (Mont. 1984), 689 P.2d 1231, 1233, 41 St.Rep. 1971, 1973, aff'd after remand, 718 P.2d 1335, 43 St.Rep. 621. First, the ruling to be applied nonretroactively must establish a new principle of law either by overruling precedent or by deciding an issue of first impression whose result was not clearly foreshadowed. Next, the new rule must be examined to determine whether retroactive application will further or retard its operation. Third, the equity of retroactive application must be considered.

Although it can be argued that both Gates and Brinkman established new principles of law, it can also be argued that both principles were clearly foreshadowed. We conclude this factor does not weigh heavily toward either side in this case. The second factor to be weighed is whether retroactive application will further the operation of the rules. The purpose of the covenant of good faith and fair dealing is to protect the employee's interest in job security. The purpose of nonapplication of the covenant to employees covered by collective bargaining agreements is to lend judicial support to the collective bargaining process. We conclude that retroactive application will further the operation and purpose of the rules set out in both Gates and Brinkman. Third, we consider whether retroactive application of these rules to this case is equitable. Both Ms. Gates and Mr. Brinkman were terminated before the rules of law which governed the disposition of their claims were enunciated. Mr. Riley's employment was terminated in July 1979, Ms. Gates' in October 1979, and Mr. Brinkman's in 1983. We conclude that to have

5

retroactively applied the rules in the two previous cases and not to apply them in this case would be clearly inequitable.

We hold that the covenant of good faith and fair dealing would be applicable in this case, except that Mr. Riley's cause of action against the Hospital was barred because it posed a significant threat to the collective bargaining process, as discussed in Brinkman. We noted in Brinkman that some claims invoke state interests in protecting the general public which outweigh the interest in supporting the collective bargaining process and justify application of the covenant. Brinkman, 729 P.2d at 1305-09. Mr. Riley's employment was terminated for unsatisfactory work performance. His claim does not invoke a state interest which outweighs the interest in supporting collective bargaining.

We therefore vacate the judgment against the Hospital and remand with instructions that the District Court dismiss the claim against the Hospital.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice L. C. Gulbrandson, specially concurring.

I specially concur with the result expressed in the majority opinion, but I do not agree that Gates, supra, should be applied to a termination that occurred three years prior to that decision.

_____
Justice

Mr. Justice John C. Sheehy, dissenting:


It is important to this case that Michael Riley was fired from his position at Warm Springs State Hospital and that he brought suit against his employer, and also against his union, on the grounds that the union and the hospital had each failed to protect his interests properly under the collective bargaining agreement.

The jury in this case agreed with Mr. Riley. It awarded a judgment of $18,343 against the employer hospital, but also awarded a separate judgment of $18,343 against the union for inadequate representation. The hospital appealed the judgment to this Court. The union has not appealed, apparently because the judgment against the union is uncollectable.

It is the duty of an appellate court to view the testimony in the light most favorable to the prevailing party at the trial level and to deem every fact proved which the evidence tends to prove. Hannigan v. Northern Pacific Railway Company (1963), 142 Mont. 335, 384 P.2d 493. On appeal, the facts as stated by the witnesses and believed by the jury and claimed by the prevailing party must be assumed. Holland v. Konda (1963), 142 Mont. 536, 385 P.2d 272, 6 A.L.R.3d 824. The statement of facts in the majority opinion overlook this elementary appellate rule.

The verdicts of the jury against his employer, and against the union, require us to accept as proven that under the collective bargaining agreement Riley was entitled to certain procedures before his employment could be suspended or terminated. The collective bargaining agreement required that Riley, if he were suspended, should be immediately "verbally" so advised and within three days notified in

writing of the specific causes for his suspension. This was not done. The collective bargaining agreement required both union and management to make every effort to advise the employee of his rights. This was not done. The collective bargaining agreement required that if the union believed the dismissal was discriminatory or capricious, that a hearing be held before the hospital administrator. He was not given this hearing. His union representative failed to carry out the grievance procedures provided in the collective bargaining agreement. It was the duty of the union and the hospital to follow the grievance procedures which required (1) that the grievance be first taken up with his immediate supervisor within five days of the grievance; (2) that if not then resolved, then the grievance be presented to the hospital superintendent or his designee in writing within four days of the first step; (3) if settlement was not reached in step two, that it be presented in writing to the Director of the Department of Institutions within five days of step two; and if settlement then failed that procedures be instituted for arbitration. None of these were granted to Riley.

There are two rules of law that should proceed from this case that are completely lacking in the majority opinion. The first rule of law should be that if the employer arbitrarily and capriciously fails to accord the employee his rights under a collective bargaining agreement, that in itself is a breach of the covenant of good faith and fair dealing. This Court has held that a collective bargaining agreement supplants the implied covenant of good faith and fair dealing between employer and employee. If however the collective bargaining agreement is arbitrarily disregarded by the employer, the implied covenant should come back into play.

The second rule of law that should issue from this case is that the <u>Brinkman</u> rule is inapplicable in any wrongful discharge case were the collective bargaining agreement has proved to be ineffectual.

It is demonstrably unfair that the <u>Brinkman</u> rule should be utilized by the majority to bar Riley's cause of action because of the collective bargaining agreement, when the collective bargaining agreement, as observed by both his union and the employer deprived him of his employment rights.

It was on that state of facts that the jury found its verdicts against both the Hospital and the union and in this case the verdict against the employer/hospital should be upheld.

John C. Sheehy<br>Justice