No. 98-154

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 330

CHRISTELL BENSON,

Plaintiff and Respondent,

v.

HERITAGE INN, INC., a corporation; and JOHN DOES I-XX,

Defendants and Appellants.

-------------------------------------------------------------------------------

HERITAGE INN, INC., a Corporation,

Third-Party Plaintiff and Appellant,

v.

JAMES TALCOTT CONSTRUCTION, INC., a Montana Corporation,

Third-Party Defendant and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

L.D. Nybo; Conklin, Nybo, LeVeque & Lanning, P.C.;

Great Falls, Montana

For Respondents:

Channing J. Hartelius; Hartelius, Ferguson, Baker & Kazda;

Great Falls, Montana; and Paul R. Haffeman; Davis, Hatley,

Haffeman & Tighe, P.C.; Great Falls, Montana (for Benson)

J. Dirk Beccari; Quane, Smith, Howard & Hull; Missoula,

Montana (for Talcott Construction)

Submitted on Briefs: September 17, 1998

Decided: December 30, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. On January 5, 1996, Christell Benson brought this case in the District Court of the Eighth Judicial District, Cascade County, for injuries she sustained from a slip and fall accident on the sidewalk ramp of the Heritage Inn Motel in Great Falls. On October 16, 1996, Heritage Inn filed a third-party claim against Talcott Construction, Inc., the Heritage Inn building contractor, for indemnification. On December 12, 1997, a jury found that neither the building code violations nor improper maintenance of the sidewalk ramp were the cause of Benson's injury. On December 31, 1997, Benson moved for a new trial, which the District Court granted. Heritage Inn appeals from that order. We affirm the judgment of the District Court.**

**¶2. The issue raised on appeal is whether the District Court erred when it granted Benson a new trial.**

FACTUAL BACKGROUND

**¶3. The Heritage Inn Motel in Great Falls is surrounded by a parking lot. During a remodeling project, Talcott Construction, Inc. constructed a sidewalk ramp to provide handicap and general access to the Heritage Inn casino, restaurant, and the main lobby entrance. The sidewalk ramp abuts the parking lot.**

**¶4. On January 19, 1993, Christell Benson parked her car in the Heritage Inn parking lot and walked across the parking lot and over to the sidewalk ramp in order to attend a meeting inside the Heritage Inn. While either on the sidewalk ramp, or on the parking lot pavement which abuts the sidewalk ramp, Benson slipped, fell, and**

sustained injuries.

¶5. At trial, Benson offered expert testimony that her fall could have been caused by snow, ice, or moisture on the sidewalk ramp which caused her to slip, or design defects in the ramp itself. Photographs taken after the accident showed blood drops near the end of the ramp closest to the parking lot. Based upon the location of the blood drops, Heritage Inn maintained that the fall could have occurred in a manner other than that described by Benson's experts. Specifically, Heritage Inn maintained that Benson could have slipped or tripped in the parking lot and fallen and hit her head on the end of the ramp where the blood drops were located.

¶6. Benson retained two engineering firms to determine whether defects in the design and construction of the sidewalk ramp caused or contributed to her fall. One engineering report stated that the ramp's flared side slopes were built too steeply to comply with the Uniform Building Code, and should therefore have had a handrail. The second engineering report concurred with the first, and further concluded that the ramp violated other Uniform Building Code, American National Standards Institute, and Americans With Disabilities Act standards. Following discovery, the District Court granted summary judgment to Benson and against Heritage Inn and found that the ramp was defective due to numerous Uniform Building Code violations, and that Heritage Inn was negligent as a matter of law. The issues of negligent maintenance and causation of injuries were left for trial.

¶7. In a pretrial order, the parties expressly agreed to certain facts, one of which was that "[o]n January 19, 1993 at approximately 1:00 p.m., Plaintiff Christell Benson fell on the sidewalk on the north side of the Heritage Inn," and that the Uniform Building Code "applies to the sidewalk on which Christell Benson fell." (Emphasis added.) Just prior to closing argument, Benson filed a written motion in limine to prevent Heritage Inn from arguing contrary to these agreed facts in its closing remarks. The District Court granted that motion but allowed Heritage Inn to argue that Benson *slipped* elsewhere.

¶8. Despite the District Court's order, Heritage Inn repeatedly asserted in its closing remarks that Benson's *fall* occurred in the parking lot, not on the sidewalk ramp, and that the location of the fall essentially mandated a defense verdict according to Heritage Inn's jury instruction regarding a land owner's duty regarding the natural accumulation of snow and ice. That instruction reads:

A premises owner cannot be charged with negligence by reason of a purely natural accumulation of ice and snow where the condition is as well known to the plaintiff as to the defendant.

Purely natural conditions, such as obvious snow and ice do not create such an unreasonable dangerous condition as to require the landowner to take certain precautions.

However, a property owner may be liable for falls on accumulations of ice and snow where the hazard created by the natural accumulation is increased or a new hazard is created by an affirmative act of the property owner or its agents. Even where the condition is actually known or obvious, a property owner may be liable if it should have anticipated that injuries would result from the dangerous condition.

¶9. **Heritage Inn characterized this instruction as "the most important instruction in this case" and then suggested that because the *fall* occurred in the parking lot, Heritage Inn could not be held liable pursuant to the "natural accumulation of snow and ice" doctrine in Montana law. Specifically, Heritage Inn argued that:**

"[T]here's evidence, pretty strong evidence, that she fell in the parking lot."

"I can argue to you that there's evidence that looks like she fell in the parking lot."

"She clearly could have fallen in the parking lot. . . ."

"If she didn't fall in the parking lot, then we have to decide, well, sure she didn't fall in the parking lot then she slipped or tripped on the ramp."

"You think she fell in the parking lot, you might have to say, oh, oh, no liability here, that's natural accumulation."

"If you think she fell on the sidewalk. . . ."

"There's some question about where Mrs. Benson fell, serious question."

"The horse that pulls the cart in the lawsuit is liable whether the people that got sued are responsible, just like if you think that the fall occurred in the parking lot, there's no responsibility here because that's Montana law."

"Also there's the horse pulling it and there are problems with liability for the plaintiffs in this case and we just talked about them. Parking lot, blood drops all those kinds of things."

"If you think that the fall occurred in the parking lot, no matter how sympathetic you are, you have to let it go."

**¶10. All but one of these remarks were made after the District Court sustained Benson's objection that such remarks were contrary to the agreed facts in the pretrial order. At the conclusion of the trial, the jury returned a verdict for Heritage Inn.**

**¶11. Less than two weeks later, this Court issued our decision in *Richardson v. Corvallis Public School District No.1* (1997), 286 Mont. 309, 950 P.2d 748, in which we rejected the line of authority upon which Heritage Inn's instruction regarding landowner liability for natural accumulation of snow and ice was based, and made clear that to give such an instruction on the law would be reversible error. The District Court thereafter determined that a new trial was necessary to correct the error of giving that instruction, and because it concluded that Heritage Inn's**

argument that Benson's slip and fall occurred in the parking lot was in violation of the pretrial order, the order in limine, and a binding judicial admission as to the location of the fall. In response to Heritage Inn's appeal of the District Court's grant of a new trial, Benson has moved for costs and sanctions to be imposed against Heritage Inn.

## DISCUSSION

¶12. The issue raised by Heritage Inn on appeal is whether the District Court erred when it granted Benson a new trial.

¶13. The standard of review of a district court order granting a new trial pursuant to § 25-11-102(1) and (7), MCA, is manifest abuse of discretion. *See Baxter v. Archie Cochrane Motors, Inc.* (1995), 271 Mont. 286, 287-88, 895 P.2d 631, 632 (holding that "[t]he decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion."). *See also Rasmussen v. State Comp. Mut. Ins. Fund* (1995), 270 Mont. 492, 496, 893 P.2d 337, 339; *Jim's Excavating Serv., Inc. v. HKM Assoc.* (1994), 265 Mont. 494, 512, 878 P.2d 248, 259

¶14. Heritage Inn and Talcott Construction claim that Benson was not prejudiced by Heritage Inn's closing argument about the location of Benson's slip and fall because the jury already understood that, due to the location of the blood drops on the ramp, there was a question about how and where Benson fell. With regard to the *Richardson* decision, Heritage Inn and Talcott Construction claim that it has no application to this case because it was decided after the trial and because Benson suffered no prejudice from its nonapplication.

### Heritage Inn's closing remarks about the location of Benson's fall

¶15. With regard to assertions such as that made by Heritage Inn and Talcott Construction about the understanding of the jury, we have stated that "[a]ny allegations regarding the inner workings of the jury deliberations are inadmissible. We will not approve future attempts to combine allegations of fact with allegations of juror thought processes." *Ahmann v. American Federal Saving and Loan Ass'n* (1988), 235 Mont. 184, 190, 766 P.2d 853, 857, *overruled on other grounds by Allers v. Riley* (1995), 273 Mont. 1, 3, 901 P.2d 600, 602.

¶16. **More importantly, however, is a determination of whether Benson was in fact prejudiced by Heritage Inn's remarks in its closing argument to such an extent that she was denied a fair trial pursuant to § 25-11-102(1), MCA. The District Court concluded that the remarks were prejudicial. In** *Kuhnke v. Fisher* **(1984), 210 Mont. 114, 683 P.2d 916, we explained that where it appears that one of the parties was prevented from receiving a fair trial by improper argument in summation, the question of whether substantial evidence supports the verdict in spite of the oral argument does not arise because:**

The acid of the improper argument may have eaten away the substantial evidence presented by the plaintiff and left only prejudice against him. When a party's right to a fair trial has been materially impaired by improper jury argument, the fact of the imperfect trial transcends the substantial but conflicting evidence that supports the jury verdict.

*Kuhnke*, 210 Mont. at 125, 683 P.2d at 922.

¶17. **The remarks made by Heritage Inn were contrary to the agreed facts in the pretrial order. We have repeatedly upheld the binding effect pretrial orders have on future case proceedings.** *See Swenson v. Buffalo Bldg. Co.* **(1981), 194 Mont. 141, 635 P.2d 978;** *Workman v. McIntyre Const. Co.* **(1980), 190 Mont. 5, 617 P.2d 1281;** *Strong v. State* **(1979), 183 Mont. 410, 600 P.2d 191. Further, we have held that "an express waiver made in court by a party or his attorney conceding the truth of an alleged fact" is a judicial admission.** *DeMars v. Carlstrom* **(1997), 285 Mont. 334, 337, 948 P.2d 246, 248. Therefore, having agreed to the fact that Benson "fell on the sidewalk," Heritage Inn could not seek to challenge that fact at trial.**

¶18. **In this case, there was more than ample basis for the District Court to conclude that Heritage Inn's improper remarks gave the jury a simple factual basis for ruling against Benson on her negligent design and construction claims. If Benson's fall occurred in the parking lot, the negligent design and construction of the sidewalk could not have caused her injuries.**

¶19. **Moreover, by arguing that Benson's fall occurred in the parking lot, rather than on the sidewalk ramp, Heritage Inn was able to change the applicable standard of care according to its "natural accumulation of snow and ice" jury instruction. Thus, counsel for Heritage Inn told the jury: "[i]f you think that the fall occurred in the**

parking lot, there's no responsibility here because that's Montana law," and "[i]f you think that the fall occurred in the parking lot, no matter how sympathetic you are, you have to let it go."

¶20. Finally, by making these remarks at the close of trial after the parties had all agreed that the location of the fall was on the sidewalk ramp, Heritage Inn was able to effectively undermine Benson's ability to anticipate that argument and prepare her case accordingly. This kind of unfair surprise is precisely the type of prejudice that justifies a new trial. The confusion about the status of this agreed fact likely occurred after the District Court, without making careful distinction, allowed Heritage Inn to argue that Benson *slipped* elsewhere but not that she *fell* elsewhere.

¶21. Because of these circumstances, the District Court's determination that the remarks in question were unfairly prejudicial to Benson is correct.

### Application and effect of *Richardson v. Corvallis Public School District No. 1*

¶22. Contrary to Heritage Inn's jury instruction regarding landowner liability for natural accumulation of snow and ice, in *Richardson* we adopted the following standard of care:

The possessor of the premises has a duty to use ordinary care in maintaining the premises in a reasonably safe condition and to warn of any hidden or lurking dangers. What constitutes a reasonably safe premises is generally considered to be a question of fact. Whether a premises is reasonably safe depends to a large extent on what use the property is put to, its setting, location and other physical characteristics; the type of person who would foreseeably visit, use or occupy the premises; and the specific type of hazard or unsafe condition alleged. The possessor of the premises is not liable to persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

In other words, the possessor of the premises may no longer avoid liability simply because a dangerous activity or condition on the land is open and obvious; this includes avoiding liability for open and obvious natural accumulations of ice and snow. Rather, the possessor of the premises may only be absolved from liability for injuries resulting from

open and obvious dangers if he should not have anticipated harm to occur. This does not mean that the possessor of the premises is an absolute insurer of the safety of the premises. *See Limberhand* [*v. Big Ditch Co.* (1985), 218 Mont. 132], 706 P.2d at 499. Instead, whether the possessor of the premises should have anticipated harm depends on "the degree of ordinary care which reasonable persons would use under the same or similar circumstances." *See Limberhand*, 706 P.2d at 499.

*Richardson*, 286 Mont. at 321, 950 P.2d at 755-56.

**¶23. In their opposition to a new trial based upon § 25-11-102(7), MCA, because of an "error in law occurring at the trial and excepted to by the party making the application," Heritage Inn and Talcott Construction contend that *Richardson* should only be applied prospectively to causes of action arising after that case was decided. There is nothing in *Richardson*, however, to suggest that such a restrictive application is appropriate. Specifically, *Richardson* applies because it lacks all three of the established factors for nonretroactive application of a court decision.**

**¶24. In *Riley v. Warm Springs State Hospital* (1987), 229 Mont. 518, 748 P.2d 455, we stated the three factors which must be considered before adopting a rule of nonretroactive application of a judicial decision:**

First, the ruling to be applied nonretroactively must establish a new principle of law either by overruling precedent or by deciding an issue of first impression whose result was not clearly foreshadowed. Next, the new rule must be examined to determine whether retroactive application will further or retard its operation. Third, the equity of retroactive application must be considered.

*Riley*, 229 Mont. at 521, 748 P.2d at 457.

**¶25. In this case, none of the foregoing factors is satisfied. *Richardson* does not establish a new principle of law, but represents a clarification of the law whose result was foreshadowed by recent decisions that discuss premises liability. Indeed, in *Richardson* we pointed out that the standard of care adopted therein was "consistent with the body and trend of Montana's premises liability law as that has developed over the years" and "compatible with the general statutory standards of care**

articulated by the legislature." *Richardson*, 286 Mont. at 321, 950 P.2d at 756. Additionally, as the District Court indicated, the rule of law and principles of equity discussed in *Richardson* would not be furthered by prospective application of that case only. As we noted in *Richardson*, "the interests of both the possessors of premises and those persons foreseeably on the premises are better served by our adoption of" the standard of care we set out in that case. *Richardson*, 286 Mont. at 320, 950 P.2d at 755. Therefore, all three of the *Riley* factors for nonretroactive application of *Richardson* are lacking.

¶26. Because Heritage Inn told the jury that the jury instruction regarding natural accumulation of snow and ice was "the most important instruction in this case," and relied extensively on it in summation as the legal basis for avoiding liability, the prejudicial effect of the instruction is obvious. It cannot be reasonably said that the jury would have reached the same result had the erroneous instruction not been given.

¶27. For these reasons we conclude that the District Court did not manifestly abuse its discretion when it granted a new trial. We further conclude that the jury should be instructed in accordance with the standards set forth in *Richardson*.

¶28. With regard to the issue raised by Benson regarding the award of sanctions against Heritage Inn for appealing without "substantial or reasonable grounds," we conclude that because much of the confusion in this case was caused by the District Court's rulings on the motion in limine, jury instructions, and Benson's objection, sanctions are not appropriate.

¶29. The judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER