No. 02-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 328

DIANNE ERETH,

      Plaintiff and Appellant,

   v.

CASCADE COUNTY, ESTATE OF LILIAN
KRAVCISIN; CASCADE COUNSELING SERVICES,
PLLC, successor-in-interest to INTERCONNECTIONS
COUNSELING GROUP, INC., OR INTERCONNECTIONS
COUNSELING GROUP,

      Defendants and Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and For the County of Cascade, Cause No. BDV 2000-708,
                   Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Donald C. Robinson (argued) and Steven M. Hamilton, Poore, Roth &
           Robinson, P.C., Butte, Montana

      For Respondents:

           Nancy P. Cory and Mark D. Meyer (argued), Ugrin, Alexander,
           Zadick & Higgins, P.C., Great Falls, Montana

                         Argued:  January 7, 2003
                   Submitted:  January 23, 2003
                    Decided:  December 2, 2003

Filed:

                                    Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Appellant Dianne Ereth (Ereth) appeals the District Court's grant of summary judgment concluding that Ereth's claim for attorney malpractice was barred by the statute of limitations.  We reverse and remand for further proceedings.

¶2     The sole issue on appeal is:  Did the District Court err in concluding that § 27-2-206, MCA, which provides a three-year statute of limitations for legal malpractice claims, barred Ereth's claim?

                                    FACTS

¶3     In June 1994, Katie and Andy Schindele reported to the Cascade County Sheriff's Department that Ereth was sexually and/or physically abusing their minor children.  Ereth was subsequently arrested and charged with sexual assault and sexual intercourse without consent.

¶4     Soon thereafter, Scott Albers, the Chief Public Defender with the Cascade County Public Defender's Office, was appointed  as Ereth's defense attorney and represented her during the criminal proceedings prior to her plea agreement.  Albers required Ereth to attend weekly group sex offender sessions at InterConnections in order to reduce her sentence to pre-release time as opposed to jail time.  Ereth's therapist at InterConnections, Lilian Kravcisin (Kravcisin), theorized that Ereth had repressed memories of being abused by her own mother and father and was also repressing memories of her abuse against the Schindele children.  In order to recover Ereth's alleged repressed memories,  Kravcisin used hypnosis on Ereth on three or four occasions.  According to Kravcisin's record, Ereth while

2

hypnotized denied committing any sexual abuse; nevertheless, Kravcisin advised both Albers and Ereth that Ereth's subconscious was in denial. Even though she maintained her innocence, Ereth attended Kravcisin's group sessions to determine whether she actually had repressed memories of sexually abusing the children.

¶5      Based on Kravcisin's opinion, Albers concluded that it would be to Ereth's benefit to enter into a plea agreement in order to avoid a lengthy prison sentence. Eventually, Albers and the Cascade County Attorney's Office negotiated a plea agreement whereby Ereth would enter an *Alford* plea in exchange for consideration of a lesser sentence. According to Ereth, she based her decision to plea on Albers' advice that she was repressing memories of abusing the children and that if she did not plead, she would be risking a lengthy prison sentence. Ereth entered an *Alford* plea on April 12, 1996. At the change of plea hearing, Ereth maintained her innocence, but testified that "in talking with the other members of my group [at InterConnections], I have come to believe that there is a possibility I could have done this."

¶6      Almost immediately after pleading, Ereth had second thoughts. Less than two weeks after entering the plea, Ereth called her newly-appointed attorney, Eric Olson, and inquired about withdrawing her guilty plea. On July 19, 1996, Ereth filed a Notice of Withdrawal of Plea and Demand to Proceed to Trial. In her supporting memorandum filed on July 26, 1996, Ereth expressly alleged Scott Albers pressured and unduly influenced her to enter the *Alford* plea. The District Court denied Ereth's Motion to Withdraw Guilty Plea, and ordered a Pre-Sentence Investigation Report be prepared. The Pre-Sentence Investigation contains

3

Ereth's statement that reflects her belief that Scott Albers was inept and negligently coerced her into accepting the *Alford* plea.

¶7    On March 19, 1997, Ereth again petitioned the District Court to reconsider her request to withdraw her plea of guilty. Ereth's request was predicated upon the grounds that Scott Albers was inept and that both he and Lilian Kravcisin exerted undue influence upon Ereth to convince her to plead guilty. Ereth supported the motion with her Affidavit, dated March 19, 1997. Ereth was assigned new counsel, J. Kim Schulke, who was not affiliated with the Cascade County Public Defender's Office. On April 14,1997, Ereth's new counsel filed a Memorandum in Support of Motion to Withdraw Guilty Plea. An entire section of that memorandum was devoted to Ereth's ineffective assistance of counsel argument. Specifically, Ereth alleged that her *Alford* plea was forced upon her by her former counsel, Scott Albers, and by sex offender therapist, Lilian Kravcisin, in that her free will was overridden by the scientifically inaccurate opinion of her therapist and by her attorney's legal advice based upon that opinion.

¶8    The District Court ultimately denied Ereth's request to withdraw her plea. On June 13, 1997, Ereth was sentenced to ten years of incarceration, with six years suspended, $10,000.00 restitution to the victims and 200 hours of community service. On August 11, 1998, the Montana Supreme Court reversed the District Court's decision denying Ereth's motion to withdraw her guilty plea, and remanded the matter for trial. *See State v. Ereth*, 1998 MT 197, 290 Mont. 294, 964 P.2d 26.

¶9 The matter was scheduled for trial, and a jury was called and impaneled. However, on the eve of trial, the Cascade County Attorney moved to dismiss the charges. The Cascade County Attorney claimed that, due to the five-year lapse in time from the date of the incident to the date of trial, the witnesses were not able to provide sufficient recall of the facts and circumstances surrounding the incidents to prove the case beyond a reasonable doubt.

¶10 On August 11, 2000, Ereth instituted the above-entitled action asserting, *inter alia*, a legal malpractice claim against Scott Albers, the Public Defender who represented her in criminal proceedings. Ereth's complaint alleges that Albers "negligently coerced [Ereth] into accepting an *Alford* plea of guilty which was later overturned by the Montana Supreme Court upon [Ereth's] request through separate counsel." Cascade County, on behalf of the Cascade Public Defender Office and Scott Albers, moved for summary judgment, asserting Ereth's legal malpractice claim was barred by the three-year statute of limitations. The District Court entered summary judgment in favor of Cascade County, and Ereth filed this timely appeal.

## STANDARD OF REVIEW

¶11 The standard of review for a grant of summary judgment is *de novo*. This Court applies the same evaluation as the trial court under Rule 56, M.R.Civ.P. The moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Gonzales v. Walchuk,* 2002 MT 262, ¶ 9, 312 Mont. 240, ¶ 9, 59 P.3d 377, ¶ 9. Once the moving party has met its burden, the opposing party must, in order to raise a genuine issue of material fact, present substantial evidence essential to one

or more elements of its case rather than mere conclusory or speculative statements. *Gonzales,* ¶ 9. In addition, our standard of review of a question of law is whether the trial court's legal conclusions are correct. *Gonzales*, ¶ 9.

DISCUSSION

¶12 The determinative issue of this appeal is whether the District Court erred in ruling that Ereth's cause of action against Albers was barred by the statute of limitations for legal malpractice claims, § 27-2-206, MCA.

¶13 In its order granting summary judgment, the District Court concluded that the three-year statute of limitations began to run on July 26, 1996, the date on which Ereth filed an affidavit in support of her Motion to Withdraw stating that Albers had exerted undue influence in persuading her to plea. The District Court determined that Ereth was first injured when she relied on Albers' advice to sign the plea agreement on April 12, 1996, and that she had discovered this alleged professional negligent act by July 26, 1996. On that date, Ereth filed a sworn affidavit where she declared that Albers had "exerted undue influence on [her] in order to persuade [her] to plead to these charges." The District Court ruled that starting July 26, 1996, Ereth had a cause of action against Albers for legal malpractice, which could have been filed any time within three years therefrom. Because Ereth did not file her claim until August 11, 2000, the District Court ruled that the statute of limitations barred her claim.

¶14 Ereth argues that the statute of limitations did not begin to run until she obtained relief from her conviction on September 21, 1999, the day the Cascade County prosecutor filed a

6

motion to dismiss the case. Ereth claims that she could not have filed against Albers prior to that date because the elements of her cause of action had not accrued. Ereth also maintains that if she had filed before then, her claim would have been dismissed for failure to state a claim. To that end, Ereth asserts that until the charges against her were dropped, she could not have presented a *prima facie* case that "but for" Albers' negligence she would not have been convicted. Moreover, she posits that her damages, an element of her cause of action, had not accrued until she obtained relief from the charges against her.

¶15   The County maintains that Ereth has failed to articulate a valid basis for tolling the three-year statute of limitations and that Ereth's argument on appeal contravenes the express terms of § 27-2-206, MCA, which provides that a legal malpractice claim must be commenced "within 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the act, error or omission . . . ." According to the County, the record clearly established that the basis for Ereth's claim for legal malpractice, Albers' ineffective assistance, was known to her over three years before she filed her claim. The County asserts that both the July 26, 1996, affidavit and the March 19, 1997, affidavit indicate that Ereth was aware that Albers exerted undue influence on her in persuading her to accept the plea agreement.

¶16   The fundamental purpose of statutes of limitations is to preclude claims in which a party's ability to mount an effective defense has been lessened or defeated due to the passage of time. The policy underlying the bar imposed by statutes of limitations is, at its roots, one of basic fairness. As we have stated in the past, our system of jurisprudence is designed to

7

achieve substantial justice through application of the law after the parties have had an opportunity to fully present both sides of a controversy. The failure to bring an action within a reasonable time is clearly not conducive to a full presentation of the evidence nor a search for the truth. Consequently, the law will not reward the plaintiff who sleeps on his or her rights to the detriment of a defendant. *Gomez v. State*, 1999 MT 67, ¶ 25, 293 Mont. 531, ¶ 25, 975 P.2d 1258, ¶ 25; *E.W. v. D.C.H.* (1988), 231 Mont. 481, 484, 754 P.2d 817, 819.

¶17 Section 27-2-206, MCA, provides that an action against an attorney for legal malpractice must be commenced within three years after the "plaintiff discovers or through the use of reasonable diligence should have discovered the act, error, or omission, whichever occurs last . . . ." To recover damages in a legal malpractice claim, a plaintiff must establish each of the following elements: first, that the professional owed him a duty of care; second, that the professional breached this duty by a failure to use reasonable care and skill; third, that the plaintiff has suffered an injury; and finally, that the professional's conduct was the proximate cause of the injury. *Hauschulz v. Michael Law Firm*, 2001 MT 160, ¶ 11, 306 Mont. 102, ¶ 11, 30 P.3d 357, ¶ 11.

¶18 While this Court has thoroughly discussed the appropriate standard for determining when the statute of limitations begins to run in the context of legal malpractice in civil matters *(see Spolar v. Datsopoulos,* 2003 MT 54, 314 Mont. 364, 66 P.3d 284; *Johnson v. Barrett*, 1999 MT 176, 295 Mont. 254, 983 P.2d 925; *Uhler v. Doak* (1994), 268 Mont. 191, 885 P.2d 1297; and *Peschel v. Jones* (1988), 232 Mont. 516, 760 P.2d 51), this Court has not had the opportunity to address when the statute of limitations begins to run on a legal

malpractice claim stemming from criminal representation. Therefore, the issue before us is one of first impression. The crux of the issue is whether the statute of limitations for legal malpractice should be tolled for the criminal defendant while he or she pursues a claim for postconviction relief or whether he or she should pursue a claim for legal malpractice simultaneously with the claim for postconviction relief. Since this is an issue of first impression, we will review decisions from other jurisdictions that have already addressed the subject.

¶19    Our review of the case law reveals that other jurisdictions are divided on the issue of requiring postconviction relief as a prerequisite to maintaining a legal malpractice action in a criminal case. The first group of states have adopted what is referred to as a "one-track" approach. These courts require a criminal defendant to first litigate a successful claim for postconviction relief before permitting him or her to file a claim for legal malpractice against counsel. *See Canaan v. Bartee* (Kan. 2003), 72 P.3d 911; *Stevens v. Bispham* (Or. 1993), 851 P.2d 556; *Noske v. Friedberg* (Minn. 2003), 656 N.W.2d 409; *Shaw v. State, Dep't of Admin.* (Alaska 1991), 816 P.2d 1358; *Carmel v. Lunney* (N.Y. 1987), 511 N.E.2d 1126; *Glenn v. Aiken* (Mass. 1991),569 N.E.2d 783. The second group of states have adopted a "two-track" approach. This allows a defendant to simultaneously pursue a claim for postconviction relief in the criminal court and a claim for legal malpractice in the civil courts. *See Duncan v. Campbell* (N.M. 1997), 936 P.2d 863; *Seevers v. Potter* (Neb. 1995), 537 N.W.2d 505; *Gebhardt v. O'Rourke* (Mich. 1994), 510 N.W.2d 900; *Quick v. Swem* (Pa.Super.1989), 568 A.2d 223; *Bowman v. Doherty* (Kan. 1984), 686 P.2d 112; *Krahn v.*

9

*Kinney* (Ohio 1989), 538 N.E.2d 1058; *Mylar v. Wilkinson* (Ala.1983), 435 So.2d 1237; *McCord v. Bailey* (D.C. Cir. 1980), 636 F.2d 606; *Jepson v. Stubbs* (Mo. 1977), 555 S.W.2d 307.

¶20     Under the one-track approach, the statute of limitations does not begin to run until the criminal defendant is exonerated through some sort of postconviction relief.  Under the two-track approach, the statute of limitations commences to run upon discovery of the error, irrespective of whether  postconviction relief is sought or granted.  The advantage to each is illustrated by a review of two decisions, the first adopting the one-track approach, and the second adopting a two-track approach.

¶21     We first review the one-track approach.  In *Shaw v. State, Dep't of Admin.* (Alaska 1991), 816 P.2d 1358, the Alaska Supreme Court held that a convicted criminal defendant must obtain postconviction relief as a precondition to maintaining a legal malpractice claim against his or her attorney.  *Shaw*, 816 P.2d at 1359.  Shaw was convicted in 1973 on two counts of burglary and two counts of robbery.  On August 15, 1986, Shaw's convictions were set aside as being constitutionally defective, at least in part because of a conflict of interest between Shaw, his co-defendant, and the attorney who represented both defendants.  On January 13, 1988, Shaw filed a complaint alleging that his trial counsel negligently allowed a conflict of interest to lead to his 1973 convictions.  The trial counsel raised the defense of the statute of limitations.

¶22     The *Shaw* court ruled that Shaw's legal malpractice claim was not barred by the statute of limitations and that the statute was tolled until Shaw had received postconviction

10

relief. The *Shaw* court held that public policy supported some form of postconviction relief as a prerequisite to filing a claim for legal malpractice. According to the court, judicial resources are conserved since, if the defendant is denied postconviction relief, the legal principle of collateral estoppel serves to eliminate any frivolous malpractice claims. Furthermore, the court found that the requirement of postconviction relief promoted judicial economy because a number of the issues litigated in the quest for postconviction relief, such as proximate cause and damages, would be duplicated and relevant in the legal malpractice claim. Additionally, the *Shaw* court highlighted the importance of developing a bright line test for purposes of assisting courts in applying the statute of limitations.

¶23    In *Seevers v. Potter* (Neb. 1995), 537 N.W.2d 505, 510, the Nebraska Supreme Court, while noting, "[t]he simplicity of the [single track] rule appears attractive at first blush," found that the Michigan Supreme Court's "two-track" analysis in *Gebhardt v. O'Rouke* (Mich. 1994), 510 N.W.2d 900, to be more persuasive. In *Gebhardt* the Michigan Supreme Court declined to follow *Shaw* and instead held that the statute of limitations started to run when the criminal defendant discovered counsel's negligence. The defendant in *Gebhardt* was convicted on January 8, 1987, of aiding and abetting a rape. Gebhardt successfully petitioned the trial court for a new trial, and on July 11, 1988, the trial court entered a judgment of acquittal. The order of acquittal became final on April 19, 1989. On November 3, 1989, Gebhardt initiated a legal malpractice lawsuit against her criminal trial counsel. The statute of limitations in Michigan required the plaintiff in a legal malpractice case to file suit within two years of the attorney's last day of service or within six months

11

of when the plaintiff discovered or should have discovered the claim. Like Shaw, Gebhardt argued that the statute of limitations should have been tolled until she successfully obtained post-conviction relief. However, the *Gebhardt* court rejected the *Shaw* rule as a "legal fiction with serious analytical flaws." *Gebhardt*, 510 N.W.2d at 906.[1] The *Gebhardt* court found the policy arguments set forth by the *Shaw* court to be unpersuasive when balanced against the above-mentioned policies underlying the statute of limitations.

> Issue preclusion and collateral estoppel should be utilized in the appropriate case. However, the availability of these devices should not lead to a subversion of the statute of limitations by allowing a criminal defendant to first obtain postconviction relief before starting the clock on the limitation period.

*Gebhardt,* 510 N.W.2d at 906-07.

¶24    The *Gebhardt* court, while recognizing the complications inherent in the simultaneous prosecution of a legal malpractice claim and a postconviction relief claim, concluded that these considerations were outweighed by concerns with the indefinite tolling of the statute of limitations and the need to preclude stale claims. The *Gebhardt* court concluded the statute of limitations starts to run on the date the criminal defendant discovers counsel's negligent acts or omissions. As the *Gebhardt* court observed, it is not unusual for a party to have both a criminal matter pending before a court, and a related civil suit arising out of that

---

[1] In addressing the legal fictions, the New Mexico Court of Appeals stated: "In particular, the idea that defendants convicted and serving time because of their attorneys' malpractice are not legally harmed until they are exonerated and released would surprise not only those defendants, but any person whose thought processes are guided by common sense." *Duncan v. Campbell* (N.M. 1997), 936 P.2d 863, 868.

criminal matter also pending. In those instances, the court presented with the civil suit will commonly yield to the criminal matter, allowing it to proceed so the rights of the criminal defendant will not be infringed. *Gebhardt*, 510 N.W.2d at 907.

¶25 The dissent, in advocating the "one-track" approach, points out that in *Brown v. State,* 2002 MT 58, 309 Mont. 106, 46 P.3d 42, we affirmed the district court's dismissal of Brown's cause of action under 42 U.S.C. § 1983 for the reason that "Brown's claims, if proven, would necessarily imply the invalidity of his conviction or sentence and are therefore not cognizable under § 1983 unless he can demonstrate that the conviction or sentence has already been invalidated." *Brown*, ¶ 26. The reason the Court employed the one-track approach in *Brown* is because that approach was mandated by the United States Supreme Court's interpretation of the federal civil rights statute, 42 U.S.C. § 1983. *Heck v. Humphrey* (1994), 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (§ 1983 plaintiff must prove that conviction or sentence has been reversed, expunged or declared invalid). In the present matter, since we are applying a state statute of limitations, we are not constrained by federal precedent.

¶26 After considering both approaches, we find the Michigan Supreme Court's analysis in *Gebhardt* more persuasive because it incorporates a strict reading of the statute of limitations that at the same time addresses the problems posed by multiple litigations. The two-track approach recognizes that a criminal defendant who has initiated postconviction relief proceedings does have, or should have, sufficient knowledge of his or her legal malpractice claim for statute of limitations purposes. Therefore, in order to put counsel on

13

notice that he or she will have to defend against a malpractice claim, and thereby honor the policies underlying the statute of limitations, we hold that a criminal defendant must file a malpractice complaint within three years of discovering the act, error or omission. As the Court noted in *Seevers*, 537 N.W.2d at 511, with the claim preserved, the defendant can seek a stay in the civil suit until the criminal case is resolved. The trial court handling the civil suit would have discretion regarding the duration of the stay, keeping in mind the nature of the claim asserted for postconviction relief.

¶27     It is clear from the record before us that Ereth had discovered Albers' negligence at least by July 26, 1996, when she filed an affidavit claiming that he had exerted undue influence on her. She did not file her claim within three years from that date. We must determine, however, whether to apply this new rule retroactively so as to bar Ereth's cause of action or to apply it prospectively only.

¶28     For the reasons set forth below, we apply this new rule prospectively.

¶29     In *Riley v. Warm Springs State Hosp.* (1987), 229 Mont. 518, 748 P.2d 455, we set forth the three factors to be considered in determining whether or not to apply a judicial decision retroactively. If nonretroactive application is sought, "[f]irst, the ruling to be applied nonretroactively must establish a new principle of law either by overruling precedent or by deciding an issue of first impression whose result was not clearly foreshadowed. Next, the new rule must be examined to determine whether retroactive application will further or retard its operation. Third, the equity of retroactive application must be considered." *Riley*,

14

229 Mont. at 521, 748 P.2d at 457. All three of these factors weigh in favor of nonretroactive application of this new rule in our jurisprudence.

¶30    First, the rule set forth in this Opinion is a matter of first impression (¶ 18). Moreover, given the dearth of precedent on the subject in this jurisdiction, the result of the Court's analysis was not, in any sense, "clearly foreshadowed." Second, retroactive application would not further operation of the rule; the announcement of the new rule will still put parties convicted of criminal offenses on notice that they must file any malpractice claims against their attorneys within three years of discovering the act, error or omission. And, third, the equity of retroactive application must be taken into account. The equities unique to this case weigh heavily in Ereth's favor, as does our longstanding preference for allowing "resolution of claims on their merits rather than the arbitrary bar of the statute of limitations." *Kearney v. KXLF Communications, Inc.* (1994), 263 Mont. 407, 413, 869 P.2d 772, 775.

¶31    Accordingly, parties convicted in a criminal proceeding are hereby put on notice that any alleged act of attorney error or omission discovered on or after the date of this Opinion triggers the running of the statute of limitations for the filing of any legal malpractice claim. As to claims where the discovery of the act, error or omission occurred prior to the date of this decision, those claimants have three years from the date of discovery to file a malpractice claim or until December 31, 2004, whichever is longer.

¶32    Although we affirm the District Court's conclusion that the three-year statute of limitations for a legal malpractice claim begins to run upon discovery of the alleged error or

15

omission, we conclude that it would be inequitable to apply this new rule to Ereth's claim. Accordingly, we reverse the granting of summary judgment in favor of Cascade County and remand for further proceedings.


/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON
/S/ JIM RICE

Justice Patricia O. Cotter concurring in part and dissenting in part.

¶33    I dissent.  I would conclude that Ereth's claim and other similar claims should be analyzed pursuant to the "one-track" approach.  I concur, however, in the Court's decision to allow Ereth's claim to proceed.

¶34    While the Court notes at ¶ 17 of its Opinion that there are four elements to a cause of action for legal malpractice, and proceeds to recite those elements, the Court goes on to analyze and decide Ereth's case without further reference to them.  The key element of legal malpractice at issue here--which Ereth could not have satisfied had she filed suit against Cascade County before we reversed the District Court's decision denying her motion to withdraw her guilty plea--is the fourth element of the claim, *i.e.*, establishing that the professional's conduct was the proximate cause of her injury.

¶35    As this Court points out, Ereth entered an *Alford* plea in exchange for consideration of a lesser sentence.  Upon having second thoughts, she moved not once but twice to withdraw her guilty plea, both times unsuccessfully.  The basis for her motion was her belief that Albers negligently coerced her into accepting an *Alford* plea.  The District Court rejected Ereth's request to withdraw her plea, and sentenced her to ten years of incarceration on her plea of guilty.  The question is:  until this Court reversed the decision of the District Court, how could Ereth possibly establish that her guilty plea and imprisonment were the result of Albers' misconduct and not her own?

¶36 In *Uhler v. Doak*, this Court concluded that the period of limitations within which a cause of action for attorney malpractice must be commenced, does not begin to run until the cause of action accrues. *Uhler*, 268 Mont. at 200. As we further noted in *Uhler*, the accrual of a cause of action is governed by § 27-2-102(1)(a), MCA, which provides in pertinent part, that a cause of action accrues when all elements of the claim or cause exist or have occurred, and "the right to maintain an action on the claim or cause is complete . . . ." We further noted in *Uhler*, as we have in numerous other cases, that the plaintiff in a malpractice action must show that "but for" the negligence of the attorney, she would have been successful in her defense of the action. *Uhler,* 268 Mont. at 196, 885 P.2d at 1300; *Lorash v. Eptstein* (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337.

¶37 There is no way that Ereth could have satisfied the accrual component of the cause of action or the "but for" test, until such time as this Court reversed the District Court's refusal to allow her to set aside her guilty plea. For, before this occurred, there was a guilty plea, a conviction, and sentence for sexual assault and sexual intercourse without consent against Ereth. Unless this conviction was set aside, Ereth's own criminal actions--and not the conduct of Albers--would be presumed to be the proximate cause of her injury. Until that criminal conviction was set aside, Ereth would be collaterally estopped from arguing her innocence, and would therefore have no basis for stating a cause of action against Albers.

19

¶38 Although the Court correctly notes that the precise issue before us is one of first impression, we have considered and rejected claims similar to that brought by Ereth, because the claim was brought **before** the underlying conviction was invalidated. In *Brown v. State*, 2002 MT 58, 309 Mont. 106, 46 P.3d 42, Justice Leaphart, writing for the Court, affirmed the district court's dismissal of Brown's cause of action under 42 U.S.C § 1983 against the state for alleged deprivation of his rights by prison officials. Relying on *Heck v. Humphrey* (1994), 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383, we concluded that ". . . Brown's claims, if proven, would necessarily imply the invalidity of his conviction or sentence and are therefore not cognizable under § 1983 unless he can demonstrate that the conviction or sentence has already been invalidated." *Brown*, ¶ 26. In *Rudolph v. Dussault* (1988), 234 Mont. 449, 763 P.2d 1139, we similarly concluded that Rudolph would be barred by collateral estoppel from bringing a cause of action against the city for violation of his civil rights, in light of his criminal conviction. In both of these cases, we concluded that the criminal conviction was a bar to the defendant's pursuit of a civil action arising out of the criminal matter. The same logic applies to Ereth's claims here: until her criminal conviction was dismissed, Ereth would not have been able to establish that, but for Alber's negligence, she would not have been wrongfully convicted and imprisoned.

¶39 For the foregoing reasons, and for the policy reasons set forth in *Canaan, Noske,* and the other "one-track" cases addressed in the Court's Opinion, I dissent from our application

of the "two-track" approach to Ereth's legal malpractice case. I would apply the "one-track" approach here and in similar cases arising in the future.

/S/ PATRICIA COTTER

Justice James M. Regnier joins in the foregoing concurrence and dissent of Justice Patricia O. Cotter.

/S/ JIM REGNIER