No. 90-097

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MONTANA BANK OF ROUNDUP, N.A.,

      Plaintiff and Appellant,

  v.

MUSSELSHELL COUNTY BOARD OF
COMMISSIONERS, MUSSELSHELL COUNTY,
and DEPARTMENT OF REVENUE, STATE
OF MONTANA,

      Defendants and Respondents.

APPEAL FROM:   District Court of the Fourteenth Judicial District,
                In and for the County of Musselshell,
                The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Thomas E. Towe, Esq., Billings, Montana

      For Respondent:

          Eric Fehlig, Esq., Department of Revenue,
          Helena, Montana

          Vicky Krause, Esq., Musselshell County Attorney,
          Roundup, Montana

Submitted:  October 30, 1990

Decided:  April 30, 1991

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The Montana Bank of Roundup appeals from an order of the Fourteenth Judicial District Court, granting summary judgment in favor of Musselshell County and the Department of Revenue and denying summary judgment to the Montana Bank of Roundup.

We affirm.

Appellant and Respondents have raised several issues in this appeal, but we need only resolve two of these to decide the questions presented by the parties. These are:

1. Whether the Bank should have been permitted to proceed on a claim for a tax refund pursuant to § 15-16-601, MCA, after having been denied its claim for a refund under § 15-1-402, MCA.

2. Whether the Department of Revenue was prohibited from taxing federal obligations for the years 1969 to 1973.

For the tax years 1969 through 1973, the former State Board of Equalization, predecessor of the Department of Revenue (DOR), assessed and collected a bank shares tax from the Montana Bank of Roundup (Bank). In 1974, the DOR audited the Bank for tax years 1969 through 1974 and determined that the Bank had misrepresented to the taxing authorities the value of the Bank's shares for tax years 1969 through 1973. On or about September 19, 1974, the DOR issued a reassessment, increasing the taxable value of the Bank's shares. On November 21, 1974, the Musselshell County Treasurer assessed a bank shares deficiency tax in the amount of $82,179.

Just prior to the DOR's 1974 audit of the Bank, the Bank appealed its 1973 bank shares assessment to the Musselshell County Tax Appeal Board and the State Tax Appeal Board (STAB), and then sought judicial review of the STAB decision in District Court in Lewis and Clark County. The District Court judgment permitted the Bank to deduct reserves for bond losses and real estate. The DOR appealed the order of the District Court, which was affirmed in part and reversed in part in Montana National Bank of Roundup v. Department of Revenue, 167 Mont. 429, 539 P.2d 722 (1975). No judgment was entered in Lewis and Clark County on this cause.

On May 20, 1976, the Bank paid $90,621 under protest, the amount representing the bank shares tax deficiency assessed in November of 1974, plus additional penalties and interest accrued.

On July 2, 1976, the Bank filed a complaint in Lewis and Clark County seeking refund of the May 20, 1976, payment. Venue was subsequently transferred to Musselshell County. On May 8, 1978, Musselshell County District Court dismissed the cause. On appeal to this Court, we affirmed the decision of the District Court in an order, dismissing the appeal for lack of jurisdiction for failure to timely serve the Musselshell County Treasurer, and for mootness, the protested funds having already been distributed. That order is unreported.

The Bank then submitted a claim dated April 14, 1980, to the Musselshell County Commissioners, seeking refund of the bank shares tax deficiency, interest and penalty paid under protest by the Bank

3

in 1976. The Commissioners denied the claim by correspondence dated April 21, 1980, on the grounds that the claim had already been litigated, and the Musselshell County District Court and the Montana Supreme Court had determined that the County was not required to make a refund. The Bank submitted an amended claim for refund which was denied on December 15, 1980, for the same reasons that the April claim had been denied.

On January 7, 1981, the Bank filed a complaint in the present cause seeking refund of the bank shares tax deficiency for the years 1969 through 1973 and also for a refund of the original bank shares tax assessment collected for the years 1969 through 1973. The Bank stated in its briefs that it invoked the District Court's jurisdiction pursuant to the provisions of § 15-16-601, MCA. The Bank claimed the Commissioners had erred as a matter of law when they denied the Bank's claim for refund on April 21, 1980, and again denied the amended claim on December 15, 1980.

The District Court entered judgment against the Bank on December 28, 1989, holding essentially as follows:

1. The County Commissioners did not err when they denied the refund claims on April 21, 1980, and on December 15, 1980, because the Supreme Court order (unreported) of January 17, 1979, had determined that the Bank's claim for refund was moot.

2. No evidence supported the Bank's allegation that the assessments for tax years 1969 through 1973 or the deficiency assessment were either erroneously or illegally applied.

4

3. The case of Montana National Bank of Roundup v. Department of Revenue, 167 Mont. 429, 539 P.2d 722 (1975), was never followed by a judgment allowing a deduction of the value of the real property, so the holding of this Court on January 17, 1979, that the issue of the refund was moot, controlled.

4. The transfer of the stock of the Bank's holding company, sixteen months prior to the bank shares tax deficiency assessment, did not defeat the right of the County to collect the tax deficiency.

5. The holding in Montana Bankers Association v. Montana Department of Revenue, 177 Mont. 112, 580 P.2d 909 (1978), that the State could not tax the value of federal obligations in the computation of the bank shares tax was res judicata to the parties to that cause only and was a holding not clearly foreshadowed and so not entitled to retroactive application.

There are two taxes at issue in this case. The first payment is the original bank shares tax for taxable years 1969 through 1973. The original payments for years 1969 through 1972 were not paid under protest, and this is the first time they have been at issue.

The second tax at issue is the 1974 reassessed tax paid under protest. The Bank action to recover those monies under the protest statute, § 15-1-402, MCA, was ultimately dismissed by this Court in Roundup National Bank v. Dept. of Revenue, No. 14389, January 17, 1979. The Bank then filed a claim for refund and an amended

5

claim for refund with the Musselshell County Board of Commissioners and the DOR under § 15-16-601, MCA, the statute allowing relief for illegally or erroneously collected taxes. These claims were denied by the Commissioners on December 15, 1980, on the grounds that the issue had already been litigated (under §15-1-402, MCA). The Bank then filed its present complaint for the original and the reassessed taxes under § 15-16-601, MCA, claiming that the remedies of § 15-1-402, MCA, and § 15-16-601, MCA, may be pursued alternatively.

The first issue before this Court is whether the Bank should have been permitted to proceed on a claim for a tax refund pursuant to § 15-16-601, MCA, after having been denied its claim for a refund under § 15-1-402, MCA.

The Bank originally filed a claim for refund for the taxes paid under protest pursuant to § 15-1-402, MCA (formerly § 84-4502, R.C.M.). Section 15-1-402, MCA, states in pertinent part:

(1) The person upon whom a tax or license fee is being imposed may proceed under 15-1-406 or may, before the tax or license fee becomes delinquent, pay under written protest that portion of the tax or license fee protested.
. . .

(2) After having exhausted the administrative appeals available under Title 15, chapters 2 and 15, a person or his legal representative may bring an action in any court of competent jurisdiction against the officers to whom said tax or license fee was paid or against the county or municipality in whose behalf the same was collected and the department of revenue.

6

After that action was dismissed, the Bank filed for refund for the original and the reassessed tax under § 15-16-601, MCA, which provides in part:

> (1) (a) Any taxes, interest, penalties, or costs paid more than once or erroneously or illegally collected or any amount of tax paid for which a taxpayer is entitled to a refund under 15-16-612 or 15-16-613 or any part or portion of taxes paid which were mistakenly computed on government bonus or subsidy received by the taxpayer may, by order of the board of county commissioners, be refunded by the county treasurer.

The District Court held that since the Bank had originally pursued a claim pursuant to § 15-1-402, MCA, which was subsequently dismissed, it could not file a claim for refund under § 15-16-601, MCA.

The Bank appeals from this determination based on the language of § 15-16-602, MCA, that provides:

> Section 15-16-601 shall not be deemed or construed to be in conflict with the provisions of part 4 of chapter 1, but 15-16-601 and the provisions of such part 4 shall provide and afford concurrent remedies. (Emphasis added.)

The Bank claims that the plain language of § 15-16-602, MCA, permits it to proceed under § 15-16-601, MCA, after it lost on procedural grounds under § 15-1-402, MCA. The Bank relies on Uptegraft v. Dome Petroleum Corp., 764 P.2d 1350 (Okla. 1988), to assert that "the doctrine of election of remedies does not apply where the available remedies are concurrent or cumulative and consistent."

Our reading of that case is that the remedies must be pursued simultaneously, and when a judgment is reached, the remedy sought

in the alternative is terminated by the first judgment. As the Oklahoma Court said in Uptegraft, 764 P.2d at 1355:

> Where the remedies are alternate or concurrent there is no bar until satisfaction of the judgment has been obtained. The plaintiff may pursue concurrent remedies at the same time until there is a satisfaction of the judgment. (Emphasis added.)

The Bank here did not pursue its remedies at the same time. It received an unfavorable judgment on one theory and then tried another for a more favorable result.

The issue of the relationship between the "protest" statute and the "erroneously collected" statute was addressed by this Court in Department of Revenue v. Jarrett, 216 Mont. 189, 700 P.2d 985 (1985). In Jarrett, the value of the taxpayer's lot was erroneously assessed. The taxpayer obviously did not protest when he paid his taxes for the years before the mistake was detected. When the mistake was discovered, he was permitted to collect the overpayment under § 15-16-601, MCA. This Court stated:

> Clearly, § 15-16-601, MCA, was not meant to be used in lieu of the § 15-1-402, MCA, requirements of paying under protest, but when the recourse of § 15-1-402, MCA, is not available, a taxpayer can obtain a refund under § 15-16-601, MCA.

Jarrett, 216 Mont. at 194, 700 P.2d at 988.

Here, the Bank tried to use § 15-16-601, MCA, because its remedy under § 15-1-402, MCA, had failed. As we stated in Jarrett, it is only when § 15-1-402, MCA, is not available as a remedy that § 15-16-601, MCA, may be used in place of it. The Bank, having sought a remedy under § 15-1-402, MCA, and having failed in that

8

effort, is now prohibited from seeking such remedy under § 15-16-601, MCA.

Section 15-1-402, MCA, provides for an action in any court of competent jurisdiction; § 15-16-601, MCA, provides for a refund from the county treasurer pursuant to an order from the county commissioners. The concurrent remedies statute intended that taxpayers against whom a tax had been illegally or erroneously collected would not lose the option of pursuing relief through the county government. It also permits the taxpayer to whom various options are available to choose among statutory remedies. It does not provide for a taxpayer to consecutively try different methods of relief. To hold otherwise would destroy the rule of res judicata in tax matters. We affirm the District Court on this issue.

The second issue presents us with the question of whether the Department of Revenue was prohibited from taxing federal obligations for the years 1969 through 1973. The Bank claims that pursuant to this Court's decision in Montana Bankers Association v. Montana Department of Revenue, 177 Mont. 112, 580 P.2d 909 (1978), the federal obligations taxed by the State between 1969 and 1973 were exempt from taxation and that the assessment of them was therefore illegal.

Retroactive application of a judicial interpretation is guided by the principles enunciated in LaRoque v. State, 178 Mont. 315, 583 P.2d 1059 (1978). That case states:

9

> First, the decision to be applied nonretroactively must establish a new principle of law either by overruling established precedent on which litigants have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . Finally, the inequity of retroactive application must be considered, for where substantial inequity will result by such application, a ruling of nonretroactivity is proper.

LaRoque, 178 Mont. at 319, 583 P.2d at 1061. The District Court here held that Montana Bankers had indeed established a new principle of law deciding an issue of first impression whose resolution was not clearly foreshadowed. This decision is supported by the background outlined in Montana Bankers.

The 1959 amendment to 31 U.S.C. § 742, the federal exemption statute, states:

> This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax . . . .

Montana Bankers explains that the plain language of the statute "provides an exemption to every form of state taxation that requires United States obligations or interest to be considered directly or indirectly in the computation of the tax." Montana Bankers, 177 Mont. at 117, 580 P.2d at 912. This Court further noted:

> We note that neither the applicable Montana statutes nor administrative regulations expressly authorize a deduction for the value of federal obligation in computing the bank shares tax. However, the Montana statute must be construed as permitting such deduction and administrative regulations to the contrary must fall. Any other construction would violate the federal exemption statute

10

and be unconstitutional under the Supremacy Clause of the United States Constitution.

<u>Montana Bankers</u>, 177 Mont. at 118, 580 P.2d at 913.

While the 1978 decision does interpret a 1959 federal law, the language of the Court indicates that the State of Montana had not previously considered the effect of the law on state taxation formulas. It was a matter of first impression whose resolution was not clearly foreshadowed.

We hold that, under the doctrine of nonretroactivity, the exemption for federal obligations does not apply prior to 1978.

The parties to this appeal raise other issues concerning fines and penalties, bank ownership, "escaped" taxable property, and exhaustion of remedies. However, because we hold that the remedy of § 15-16-601, MCA, is not available to the Bank, we need not reach the appropriateness of the reassessed taxes. Similarly, we need not reach the issue of exhaustion of administrative remedies as raised by the respondent DOR.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12