No. 02-776

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 240

MARGERY LaFOURNAISE,

        Plaintiff and Appellant,

    v.

MONTANA DEVELOPMENTAL CENTER,
an entity of the DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Jefferson, Cause No. DV-2001-9922,
                Honorable Loren Tucker, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

                John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

        For Respondent:

                Steven C. Haddon, Special Assistant Attorney General, Risk Management
                and Tort Defense Division, Helena, Montana

                Submitted on Briefs:  May 29, 2003

                          Decided:  September 11, 2003

Filed:

_____
                    Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Margery LaFournaise (LaFournaise) brought the underlying wrongful discharge action against her former employer, the Montana Developmental Center (MDC). MDC moved for summary judgment and the Fifth Judicial District Court, Jefferson County, granted MDC's motion and entered judgment. LaFournaise appeals and we affirm.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err in granting MDC summary judgment in light of LaFournaise's claim that the collective bargaining agreement is a contract of adhesion?

¶4 2. Did the District Court err in determining LaFournaise failed to establish that the Wrongful Discharge From Employment Act violated her constitutional rights to full legal redress and a jury trial?

¶5 In November of 2000, MDC terminated LaFournaise's employment as a licensed practical nurse. LaFournaise filed a sex discrimination complaint with the Human Rights Bureau of the Montana Department of Labor and Industry and also filed a grievance through her union, the American Federation of State, County and Municipal Employees Local 971. The Human Rights Bureau later dismissed LaFournaise's complaint on the basis she had not offered sufficient evidence to give rise to an inference that unlawful discrimination had occurred. According to LaFournaise, the grievance process proceeded through several steps, after which her union representative told her the union would not proceed further and, if she wanted to continue to pursue the matter, she should file a complaint in court.

¶6    In November of 2001, LaFournaise filed a complaint in the District Court alleging that she was terminated from her employment at MDC based upon her sex and in retaliation for whistle-blowing.  MDC moved for summary judgment on the basis that LaFournaise was a union member covered by a written collective bargaining agreement (CBA).  It pointed out that, in Montana, the Wrongful Discharge From Employment Act (WDEA)--codified at §§ 39-2-901 through -915, MCA--generally provides the exclusive remedy for wrongful discharge, and argued that § 39-2-912(2), MCA, precludes an employee covered by a CBA from seeking relief under the WDEA.  In response, LaFournaise asserted that genuine issues of material fact existed regarding whether her discharge was wrongful.  She filed an affidavit stating she was told by the union that she could sue MDC, but must do it on her own.  She also waived her claim of sex discrimination.

¶7    At oral argument in the District Court on MDC's motion for summary judgment, LaFournaise advanced a new argument.  She argued that, if she is precluded from bringing an action for wrongful discharge solely because her employment was subject to a CBA, then the WDEA unconstitutionally deprives her of her right of access to the courts.  The District Court ordered additional briefing on that issue, and LaFournaise argued in her supplemental brief that arbitration had become unavailable and impractical.  She filed an affidavit stating she had never been given a copy of any agreement between the union and the state providing that her right to go forward with arbitration or to sue her employer is dependent upon the will of the union.

¶8 After reviewing the briefs, the court granted MDC's motion for summary judgment, stating LaFournaise had failed to adequately support her arguments and had not refuted the cases which MDC cited. The court further determined that no evidence supported LaFournaise's arguments that the CBA--which is not of record--requires arbitration but that arbitration is unavailable or impractical. LaFournaise appeals.

## Standard of Review

¶9 We review a district court's grant of summary judgment *de novo*, using the same Rule 56(c), M.R.Civ.P., criteria used by that court. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In the present case, neither party contends on appeal that material factual issues exist.

## Issue 1

¶10 Did the District Court err in granting MDC summary judgment in light of LaFournaise's claim that the collective bargaining agreement is a contract of adhesion?

¶11 In rejecting this claim, the District Court stated there was no evidence that the CBA is in any way a contract of adhesion. We agree.

¶12 A contract of adhesion is a contract with terms dictated by one contracting party to another party who has no voice in the contract's formulation. Contracts of adhesion are unenforceable if not within the reasonable expectations of the weaker party or if they are

4

unduly oppressive, unconscionable, or against public policy. *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 24, 310 Mont. 123, ¶ 24, 54 P.3d 1, ¶ 24 (citations omitted).

¶13 LaFournaise compares this case to *Iwen v. U.S. West Direct*, 1999 MT 63, 293 Mont. 512, 977 P.2d 989. In *Iwen*, we held that a standardized form agreement which U.S. West used to market its yellow page advertising was a contract of adhesion because Iwen was unable to negotiate the terms of the agreement and his only choice was to accept or reject it. *Iwen*, ¶ 29. We further held that the contract provision requiring arbitration was unconscionable and oppressive because the rights of the contracting parties were one-sided and unreasonably favorable to the drafter. *Iwen*, ¶ 32.

¶14 LaFournaise also contends this case is analogous to *Kloss*. In *Kloss*, a 95-year-old brokerage firm customer sued the firm and her broker, alleging violations of state securities statutes, negligence, unfair and deceptive business practices, breach of fiduciary obligations and fraud. The firm and broker defended on the basis that the customer had signed two agreements to submit any disputes to arbitration. The district court agreed with the defendants and issued an order compelling arbitration. The customer appealed. *Kloss*, ¶ 1. This Court held the arbitration provision, on a standardized form prepared by the firm and presented to the customer with no opportunity for negotiation, rendered the agreements contracts of adhesion which were unenforceable because the arbitration clauses were not within the customer's reasonable expectations. *Kloss*, ¶¶ 27-28.

¶15 LaFournaise posits that when, as in this case, a union member employee is powerless to move the grievance process forward to arbitration, the provision in the contract mandating

5

arbitration defies public policy because it cuts off the employee without a remedy. She argues that here, as in *Iwen* and *Kloss*, the contract is one of adhesion and is invalid.

¶16 There are several problems with LaFournaise's arguments. First, because the CBA is not of record, we cannot even ascertain what provisions it contains.

¶17 Moreover, assuming *arguendo* that LaFournaise correctly represents the terms of the contract, her reliance on *Iwen* and *Kloss* totally ignores the fact that the contract involved in this case is a collective bargaining agreement between her union and MDC. In Montana, public employees have the right to organize and join a labor organization, and to bargain collectively through representatives of their own choosing on matters relating to wages and other conditions of employment. *See* § 39-31-201, MCA. Here, as noted above, LaFournaise is a member of the American Federation of State, County and Municipal Employees Local 971, and the union has a CBA--covering its members--with MDC. Such collective bargaining agreements arise only after the public employer and the exclusive representative of the union have met their legal duties to bargain collectively and in good faith. *See* § 39-31-305, MCA. Thus, under basic Montana labor law applicable to public employees, and in the total absence of evidence from LaFournaise to the contrary, no standardized form of agreement exists in this case and neither contracting party dictated the terms of the CBA to the other. Consequently, the requirements for a contract of adhesion set forth in *Kloss* and *Iwen* have not been met.

¶18 In addition, a court's determination of whether a contract is unconscionable or not within a contracting party's reasonable expectations is made only after an initial determina-

6

tion that the contract is a contract of adhesion. *See Iwen*, ¶¶ 28, 30; *Kloss*, ¶ 24. Because LaFournaise has not presented evidence that the contract between her union and MDC is a contract of adhesion, we need not address whether the contract was unconscionable or within the contracting parties' reasonable expectations.

¶19 After briefing had been completed for this appeal and we had classified the case for submission on briefs, LaFournaise requested--and we granted--leave to submit additional authority. The new authority she submitted, *Circuit City Stores, Inc. v. Mantor* (9th Cir. 2003), 335 F.3d 1101, does not support LaFournaise's position.

¶20 In *Circuit City*, a former electronics store employee appealed from a federal district court's order compelling arbitration of disputes concerning the employee's termination. The Ninth Circuit Court of Appeals ruled that, because there was no meaningful opt-out opportunity for the employee when he signed his employment contract including an arbitration provision, the arbitration agreement was procedurally unconscionable. *Circuit City*, 335 F.3d at 1107. Unlike the present case, no bargaining unit or collective bargaining agreement was involved; the employment contract was between the individual employee and the employer. *See Circuit City*, 335 F.3d at 1104. Therefore, the discussion of--and rationale concerning--the lack of an opt-out opportunity is inapplicable to the facts of LaFournaise's case.

¶21 LaFournaise also cites *Cape-France Enterprises v. Estate of Peed*, 2001 MT 139, 305 Mont. 513, 29 P.3d 1011, as authority that a party may be relieved of the provisions of a contract when adhering to the contract is impracticable. In that case, a buyer of real estate

for subdividing rescinded the sales contract on the property after subdivision became impractical because it was suspected the groundwater under the property was contaminated. This Court affirmed a district court ruling that the contract could be rescinded on the basis of impracticability. *Cape-France*, ¶¶ 12, 38. LaFournaise argues the same reasoning applies here: her obligation to go forward with arbitration was impracticable and any obligation should be discharged because of that impracticability.

¶22 *Cape-France* is not a contract of adhesion case and, for that reason, it does not support LaFournaise's contract of adhesion argument. Further, the contract declared impracticable in *Cape-France* was not a collective bargaining agreement; it was a contract for sale of real property.

¶23 We conclude the District Court did not err in granting MDC summary judgment in spite of LaFournaise's claim that the CBA is a contract of adhesion.

Issue 2

¶24 Did the District Court err in determining LaFournaise failed to establish that the WDEA violated her constitutional rights to full legal redress and a jury trial?

¶25 Section 39-2-912(2), MCA, provides that the WDEA does not apply to the discharge of an employee covered by a collective bargaining agreement. LaFournaise argues that, by precluding her from pursuing an action for wrongful discharge, this statute deprives her of her right to access to the courts under Article II, Section 16, of the Montana Constitution and her right to trial by jury under Article II, Section 26, of the Montana Constitution. She cites the special concurrence to *Kloss*, in which Justice Nelson opined that access to the courts is

8

a fundamental right, the customer's waiver of that right was not an effective waiver and, therefore, the brokerage contract was unenforceable, at least to the extent of the arbitration clause. *Kloss*, ¶¶ 63, 76. We observe again that *Kloss* did not involve a collective bargaining agreement and, in any event, the Court did not premise its holdings on Article II, Section 16. *See Kloss*, ¶¶ 27-32.

¶26 Statutes are presumed to be constitutional. *Romero v. J & J Tire* (1989), 238 Mont. 146, 149, 777 P.2d 292, 294 (citation omitted). A person challenging the constitutionality of a statute bears a heavy burden of proving the statute unconstitutional beyond a reasonable doubt. *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 33, 315 Mont. 107, ¶ 33, 67 P.3d 892, ¶ 33 (citation omitted). Here, LaFournaise has produced nothing to overcome the presumption that § 39-2-912(2), MCA, is constitutional.

¶27 LaFournaise also cites *Dorwart v. Caraway*, 2002 MT 240, 312 Mont. 1, 58 P.3d 128, for the proposition that she has a fundamental right of access to the courts. She provides no analysis whatsoever, however, regarding how *Dorwart* supports her constitutional challenge to a statute which appears to be premised on the importance of statutory rights of public employees in Montana to collectively bargain regarding their employment rights through a union representative. *See* § 39-31-201, MCA.

¶28 Finally, LaFournaise's contention to the contrary notwithstanding, she is not necessarily left without a remedy or access to the courts. An action against her union may well be available.

9

¶29    We conclude the District Court did not err in determining LaFournaise failed to establish that the WDEA violated her constitutional rights to full legal redress and a jury trial.

¶30    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART