No. 04-032

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 391

TYLER DEMPSEY, Individually and
on behalf of all others similarly situated,

        Plaintiff,

   v.

ALLSTATE INSURANCE COMPANY,
an Illinois corporation,

        Defendant.

CERTIFIED QUESTION FROM:

        The United States District Court, District of Montana, Butte Division,
        Honorable Sam E. Haddon, Presiding Judge

COUNSEL OF RECORD:

        For Plaintiff:

        Brian Fay (argued) and Christopher Angel, Angel, Coil and Bartlett,
        Bozeman, Montana

        For Defendant:

        Peter Habein (argued), Crowley, Haughey, Hanson, Toole & Dietrich,
        Billings, Montana

        For Amici Curiae:

        Randall G. Nelson, Nelson & Dahle, Billings, Montana (MDTLA)

        Roger M. Sullivan (argued), McGarvey, Heberling, Sullivan & McGarvey,
        Kalispell, Montana (MTLA)

        Jon Metropoulos and Dana Hupp, Gough, Shanahan, Johnson & Waterman,
        Helena, Montana (Property Casualty Insurers)

                Argued:  July 14, 2004
             Submitted:  August 31, 2004
             Decided:  December 30, 2004

Filed:

                                   
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 The Plaintiffs, Tyler Dempsey and those similarly situated, brought this class action in the United States District Court for the District of Montana to recover damages from Allstate Insurance Company pursuant to insurance policies Allstate had issued. The Class alleges that the retroactive application of our decision in *Hardy v. Progressive Specialty Insurance Co.*, 2003 MT 85, 315 Mont. 107, 67 P.3d 892, entitles them to additional payments from past insurance claims that were not previously allowed because their automobile insurance policies did not allow for stacking. Allstate moved to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The District Court certified a question and six relevant facts to this Court and denied Allstate's motion without prejudice pending our answer.

¶2 We accepted the certified question, which is stated as:

¶3 Does the Montana Supreme Court's decision in *Hardy v. Progressive Specialty Insurance Co.*, 2003 MT 85, 315 Mont. 107, 67 P.3d 892, apply prospectively only, or does it apply retroactively to require payment of stacked uninsured, underinsured motorist and medical payment insurance coverages in qualifying circumstances on claims arising before the date of the *Hardy* decision?

¶4 Our answer is that the *Hardy* decision applies retroactively to cases pending on direct review or not yet final.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 The District Court certification included the following four agreed upon facts: [1]

¶6 1. On January 1, 2000, Dempsey was injured in a motor vehicle accident in Gallatin County, Montana. He was a named insured under an Allstate policy which had medical payment coverage limits of $2,000 applicable to each of four vehicles listed in the policy.

¶7 2. Although Dempsey's medical expenses exceeded $10,000, Allstate only paid the single limit of liability, $2,000, and declined to stack limits, relying on anti-stacking language in the policy and Montana's anti-stacking statute, § 33-23-203, MCA, which was in effect at the time of Dempsey's accident.

¶8 3. On April 18, 2003, the Montana Supreme Court decided *Hardy v. Progressive Specialty Insurance Co.*, which determined Montana's anti-stacking statute to be unconstitutional and the anti-stacking language in Progressive's insurance policy to be void and unenforceable and further held that Progressive had to "stack" and pay underinsured motorist benefits for each coverage for which the insured had paid a separate premium.

¶9 4. Allstate has maintained that the *Hardy* decision applies prospectively only. On that basis, Allstate has declined to stack uninsured motorist, underinsured motorist, or medical payment benefits in claims arising before the April 18, 2003, decision in *Hardy*. Dempsey accordingly brought a class action to force Allstate to stack medical payment, uninsured, and underinsured policy limits on all claims arising prior to the *Hardy* decision.

¶10 In sum, the claims of Dempsey and of many other Montana automobile insurance consumers ride on our determination of whether the *Hardy* decision applies retroactively or whether it only

---

[1]Facts 5 and 6 were disputed by the Class. However, we do not include them as we determine that they are not material to our decision.

applies to claims that arose on or after April 18, 2003. In addressing this issue, we invited the Montana Trial Lawyers Association (MTLA) and the Montana Defense Trial Lawyers Association (MDLTA) to appear as *amicus curiae*. We held oral argument *en banc* on July 14, 2004.

## DISCUSSION

¶11 *Does the Montana Supreme Court's decision in* Hardy v. Progressive Specialty Insurance Co. *apply prospectively only, or does it apply retroactively to require payment of stacked uninsured, underinsured motorist and medical payment insurance coverages in qualifying circumstances on claims arising before the date of the* Hardy *decision?*

I. The Rule of Retroactivity in Montana

¶12 In 1971 the United States Supreme Court announced *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. *Chevron* laid-out a flexible three-factored test for whether a decision applies prospectively only. We adopted the *Chevron* test for questions of Montana law in *LaRoque v. State* (1978), 178 Mont. 315, 318-19, 583 P.2d 1059, 1061, and subsequently applied it several times. *See, e.g.*, *Poppleton v. Rollins, Inc.* (1987), 226 Mont. 267, 271, 735 P.2d 286, 289; *Nehring v. LaCounte* (1986), 219 Mont. 462, 471, 712 P.2d 1329, 1335; *Jensen v. State, Dep't of Labor & Indus.* (1984), 213 Mont. 84, 88, 689 P.2d 1231, 1233. In the meantime, the United States Supreme Court revisited the question of prospective application several times and eventually overruled *Chevron* in *Harper v. Virginia Dep't of Taxation* (1993), 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74.

¶13 Then, in *Porter v. Galarneau* (1996), 275 Mont. 174, 185, 911 P.2d 1143, 1150, and without analyzing *Harper*, we strayed from our reliance on *Chevron*. Although *Porter* involved statutory retroactivity, we remarked in dicta that "[w]e will continue to give retroactive effect to judicial decisions, which is in accord with the U.S. Supreme Court's holding in *Harper v. Virginia Dep't of*

*Taxation*." Subsequently, this time as a general rule of law, we cited *Porter* in support of retroactivity. *See Kleinhesselink v. Chevron, U.S.A.* (1996), 277 Mont. 158, 162, 920 P.2d 108, 111 (holding that "[w]e give retroactive effect to judicial decisions" and therefore a decision of ours "is applicable to this case even though it was not available to the District Court . . . ."); *Haugen v. Blaine Bank of Montana* (1996), 279 Mont. 1, 8, 926 P.2d 1364, 1368; *State v. Steinmetz*, 1998 MT 114, ¶ 10, 288 Mont. 527, ¶ 10, 961 P.2d 95, ¶ 10 (criminal case).

¶14     Following *Steinmetz* it appeared that we would follow the rule of the United States Supreme Court's *Harper* decision. However, subsequent decisions did not bear that out. In *Ereth v. Cascade County*, 2003 MT 328, 318 Mont. 355, 81 P.3d 463, *Seubert v. Seubert*, 2000 MT 241, 301 Mont. 382, 13 P.3d 365, and *Benson v. Heritage Inn, Inc.*, 1998 MT 330, 292 Mont. 268, 971 P.2d 1227, without reference to the *Porter* line of cases, we applied the *Chevron* test to determine whether prospective application was appropriate. The Class argues that we did not expressly adopt a new approach to retroactivity in *Ereth*, *Seubert*, and *Benson*, that only pre-*Harper* cases were cited by the parties in those cases, and that the decisions were therefore aberrations where this Court inadvertently reverted to old discredited precedent. Given our long history of applying decisions prospectively we cannot ignore these recent decisions applying the *Chevron* test. However, we also cannot ignore our holdings in *Kleinhesselink* and *Haugen*. As we explain later in this opinion, the two lines of cases may be comfortably merged into a rule of retroactivity in keeping with the last seventy years of this Court's jurisprudence.

¶15     The question of whether we should follow the philosophy espoused by *Chevron* or by *Harper* does not produce a simple or binary answer. In settling what rule of retroactivity this Court follows we must look to the history surrounding the retroactivity of judicial decisions and what other states have fashioned for themselves in the wake of the United States Supreme Court's repudiation of the

*Chevron* rule. We will conclude by adopting the best elements of the *Harper* and *Chevron* rules, thus adhering to our precedents and extending a measure of flexibility not available under an outright adoption of *Harper*. In terms of the instant case, Allstate does not overcome our strong presumption in favor of retroactivity.

A.    A Brief History of Retroactivity

¶16    The retroactive/prospective distinction is relatively new to our common law tradition. In the days of Blackstone the law was understood as something that the courts applied, not something that they made. Accordingly, it made no sense for a court to comment on whether its ruling applied retroactively or not. Its ruling was simply the law as it is and always was. *See* Kermit Roosevelt III, *A Little Theory Is a Dangerous Thing: The Myth of Adjudicative Retroactivity*, 31 Conn. L. Rev. 1075, 1083 (1999) ("[T]he Blackstonian model takes law as a timeless constant, always (optimistically) assuming the correctness of the current decision. Prior inconsistent decisions are and always were incorrect.").

¶17    This view, of course, is no longer even remotely fashionable in today's climate of legal realism and aversion to castles in the clouds. Justice Holmes, the great realist of his time, was one of the first to see past Blackstone and spy the retroactive/prospective distinction. In endorsing what we now call "retroactivity" he characterized common law adjudication not as a search for an entity separate from the courts, but as an act of creation, stating "[t]he law of a State does not become something outside of the state court and independent of it by being called the common law. Whatever it is called it is the law as declared by the state judges and nothing else." *Kuhn v. Fairmont Coal Co.* (1910), 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228, 239 (Holmes, J., dissenting).

¶18    After flirting with the issue of prospective decisions in a handful of now defunct pre-*Erie* common law cases, *see, e.g.*, *Kuhn*, 215 U.S. at 360, 30 S.Ct. at 143, 54 L.Ed. at 234; *Gelpcke v.*

*City of Dubuque* (1863), 1 Wall. 175, 206, 68 U.S. 175, 206, 17 L.Ed. 520, 525, the Court ruled in 1932 that a state supreme court does not violate the United States Constitution by giving a decision mere prospective effect. *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.* (1932), 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 ("A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operations and that of relation backward."). *Great Northern* merely recognized a practice which had been gathering strength in the state courts for some time. Significantly for our purposes, however, the opinion affirmed two consolidated cases of this Court. In the rates case of *Montana Horse Products Co. v. Great Northern Railway Co.* (1932), 91 Mont. 194, 7 P.2d 919, we explicitly overruled portions of *Doney v. Northern Pacific Railway Co.* (1921), 60 Mont. 209, 199 P. 432. However, in the interests of fairness, we made our holding prospective only and gave the parties before us the benefit of the overruled rule of law. We explained that, retroactivity notwithstanding, "It would be manifestly unjust and improper" to penalize the losing party for relying on *Doney* even though we judged that case to have been in error. *See Montana Horse Products Co.*, 91 Mont. at 211, 7 P.2d at 925. We did the same in the companion case. *Sunburst Oil & Ref. Co. v. Great N. Ry. Co.* (1932), 91 Mont. 216, 220-21, 7 P.2d 927, 929.

¶19 After receiving the United States Supreme Court's blessing in *Great Northern* this Court used its power to prospectively apply its decisions when it saw fit. *See e.g.*, *Graham v. Rolandson* (1967), 150 Mont. 270, 290-91, 435 P.2d 263, 274; *Hayward v. Richardson Const. Co.* (1959), 136 Mont. 241, 250-51, 347 P.2d 475, 480; *State ex. rel. Mueller v. Todd* (1945), 117 Mont. 80, 86, 158 P.2d 299, 302. The United States Supreme Court fully endorsed and justified its own use of prospective application in 1965 with *Linkletter v. Walker* (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. In *Linkletter* the Warren Court was faced with an extraordinarily explosive issue. Four years before,

in *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, the Court had ruled that the exclusionary rule applies against the states. Linkletter argued that his conviction was obtained through evidence that should have been inadmissible under the exclusionary rule. Even though he was convicted and his case became final before the *Mapp* ruling, he reasoned that because the decisions of the United States Supreme Court apply retroactively he must be granted habeas corpus relief. *Linkletter*, 381 U.S. at 621, 85 S.Ct. at 1733, 14 L.Ed.2d at 604.

¶20　If the Court had granted Linkletter's request, thousands of otherwise properly obtained convictions would have immediately become suspect. The Court found such retroactive application too great a disruption of the criminal justice system. *Linkletter*, 381 U.S. at 637-38, 85 S.Ct. at 1742, 14 L.Ed.2d at 613. Also, applying *Mapp* to cases closed before its issuance would do nothing to further the policy behind the exclusionary rule–deterrence of unconstitutional police actions. *Linkletter*, 381 U.S. at 636-37, 85 S.Ct. at 1741-42, 14 L.Ed.2d at 612-13. Therefore, after weighing these factors and others, the Court concluded it was prudent to rule that cases final before the *Mapp* decision were unaffected by it.

¶21　In 1971 the Court extended this flexible approach to civil cases in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. In applying a prior decision that had greatly changed the operation of statutes of limitations under the Outer Continental Shelf Lands Act, the Court adopted a version of the nonretroactivity test used in its criminal cases. In the context of criminal appeals, the three factors of the test were as follows:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of

this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron*, 404 U.S. at 106-07, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (citations omitted). With this test in place the federal courts had flexibility to grant nonretroactive relief to litigants who had justifiably relied on old rules of law when there was no indication that the rule would change. Gone was any pretense that the law that the courts announce is the law as it has always been.

B. The Decline and Fall of *Chevron*

¶22 The United States Supreme Court's tolerance of prospective decisions did not last long. After indicating several times that it was not satisfied with current doctrine, the Court finally overruled itself in 1987, jettisoning the *Linkletter* approach. *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649. The Court announced a new rule requiring that all criminal decisions apply retroactively to all cases "pending on direct review or not yet final." *Griffith*, 479 U.S. at 328, 107 S.Ct. at 716, 93 L.Ed.2d at 661. It reasoned that it was unfair to announce a new rule that would affect some defendants and not others merely because of the timing of their prosecutions. *See Griffith*, 479 U.S. at 327-28, 107 S.Ct. at 715-16, 93 L.Ed.2d at 661.

¶23 It was only a matter of time before this approach to retroactivity in criminal cases found its way into the Court's civil jurisprudence. Relying on *Griffith* and the split opinion of *James B. Beam Distilling Co. v. Georgia* (1991), 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481, the Court announced that due to the inequities inherent in a flexible *Chevron* approach, federal rules of law may not be selectively applied prospectively. The Court stated:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. The rule extends *Griffith*'s ban against "selective application of new rules." Mindful of the "basic norms of

constitutional adjudication" that animated our view of retroactivity in the criminal context, we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases.

*Harper v. Virginia Dep't of Taxation* (1993), 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74, 86 (citations omitted). After *Harper*, the *Chevron* test no longer had any applicability to interpretations of federal law, whether in federal or state court. The *Harper* decision is grounded in fairness and the arbitrariness of "temporal barriers," rather than a renewed embrace of Blackstone's theory of law "existing" independently of a court's decisions.

C.      Revolt in the Provinces: *Chevron* is Alive and Well in the State Courts

¶24     *Chevron* concerned a federal question, and thus only governed issues of federal law. Therefore, although the United States Supreme Court has rejected *Chevron*, the states are free to continue employing the *Chevron* criteria in deciding questions of retroactivity of state law. Prior to *Harper*, the *Chevron* approach proved popular in state courts. *See, e.g.*, *Schreiner v. Fruit* (Alaska 1974), 519 P.2d 462, 466-67; *Peagler v. Phoenix Newspapers, Inc.* (Ariz. 1977), 560 P.2d 1216, 1220; *Hoff v. Kempton* (Minn. 1982), 317 N.W.2d 361, 363; *First of McAlester Corp. v. Oklahoma Tax Com'n* (Okla. 1985), 709 P.2d 1026, 1034; *Taskett v. KING Broad. Co.* (Wash. 1976), 546 P.2d 81, 86-87. As stated earlier, we followed the trend by adopting the *Chevron* approach for ourselves in *LaRoque v. State* (1978), 178 Mont. 315, 318-19, 583 P.2d 1059, 1061.

¶25     The state courts' reactions to *Harper* have been decidedly mixed, with many expressing disagreement, if not open hostility. For example, the Supreme Court of New Hampshire voiced support for the rejection of *Chevron*. *See Ireland v. Worcester Ins. Co.* (N.H. 2003), 826 A.2d 577, 581. However, inspired by Justice O'Connor's dissent in *Harper*, the court reserved for itself the authority to give new rules prospective effect, but that if a rule is applied retroactively to the parties before the court, it must be given uniform retroactive effect. *Ireland*, 826 A.2d at 581. In contrast,

the New Mexico Supreme Court took great issue with much of *Harper*, especially Justice Scalia's concurrence. *Beavers v. Johnson Controls World Servs., Inc.* (1994), 881 P.2d 1376, 1380-81 (criticizing Justice Scalia's seeming embrace of the Blackstonian view of judicial discovery). Stating that its jurisprudence "is more nearly consistent with the views of the *Harper* minority," the court employed *Harper*'s equality rationale to construct a *presumption* in favor of retroactivity "in lieu of the hard-and-fast rule prescribed for federal cases in *Harper*." *Beavers*, 881 P.2d at 1383. *See also McCullar v. Universal Underwriters Life Ins. Co.* (Ala. 1996), 687 So.2d 156, 184 ("A long line of Alabama precedent favors prospective application . . . when vested contractual rights are pervasive, and when retroactive application will create staggering losses . . . .").

¶26     Some state courts have welcomed *Harper* as being consistent with the court's own approach to retroactivity. *See e.g.*, *State v. Styles* (Vt. 1997), 693 A.2d 734, 735. The more common approach, however, has been to decline *Harper*'s invitation to rethink *Chevron*, and merely to note that *Harper* is only applicable to federal law. *See, e.g.*, *Citicorp v. Franchise Tax Bd.* (Cal. App. 2000), 100 Cal.Rptr.2d 509, 525 (briefly stating that "[a]lthough *Harper* cast doubt on the three-part test set out in *Chevron Oil*" it was not controlling on issues of state law); *Aleckson v. Vill. of Round Lake Park* (Ill. 1997), 679 N.E.2d 1224, 1227 (limiting *Harper* to questions of federal law and analyzing it no further); *Wenke v. Gehl Co.* (Wis. 2004), 682 N.W.2d 405, 430 n.43. Many states are uncomfortable with the harsh results that might follow if they abandon *Chevron* and completely disallow prospective decisions.

D.     Reserving *Chevron* as an Exception

¶27     Our precedent allows for a compromise between the powerful arguments of the *Harper* court and the compelling need for prospective application in limited circumstances. As explained earlier, our adoption of *Chevron* did not represent a break with a history of consistently applying universal

retroactivity. *Chevron* merely gave us the criteria by which to judge the merits of prospectively applying a decision. As it happens, *Chevron* has not been very helpful to Montana litigants seeking prospective application. Although we have applied the *Chevron* test numerous times, the test has resulted in a prospective application on only four occasions. *See Ereth v. Cascade County*, 2003 MT 328, 318 Mont. 355, 81 P.3d 463; *Seubert v. Seubert*, 2000 MT 241, 301 Mont. 382, 13 P.3d 365; *Sheehy v. State* (1991), 250 Mont. 437, 820 P.2d 1257; *Montana Bank of Roundup v. Musselshell County Bd. of Com'rs* (1991), 248 Mont. 199, 810 P.2d 1192. The last two of these cases concerned questions of federal law, and thus were abrogated by *Harper*. *Sheehy*, 250 Mont. at 441-42, 820 P.2d at 1259 (interpreting *Davis v. Michigan Dep't of the Treasury* (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891, as not applying retroactively--the exact view later overruled in *Harper*); *Montana Bank of Roundup*, 248 Mont. at 206, 810 P.2d at 1196 (prospectively applying *Montana Bankers Ass'n v. Montana Dep't of Revenue* (1978), 117 Mont. 112, 580 P.2d 909, where we interpreted 31 U.S.C. § 742). That leaves only two cases where we have given a decision nonretroactive effect under the *Chevron* test.

¶28    We agree with the *Harper* court that limiting a rule of law to its prospective application creates an arbitrary distinction between litigants based merely on the timing of their claims. Interests of fairness are not served by drawing such a line, nor are interests of finality. In the interests of finality, the line should be drawn between claims that are final and those that are not (the line drawn in *Harper*). "New legal principles, even when applied retroactively, do not apply to cases already closed." *Reynoldsville Casket Co. v. Hyde* (1995), 514 U.S. 749, 758, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820, 830. We have already recognized the arbitrary nature of prospective decisions in the criminal context in *State v. Waters*, 1999 MT 229, 296 Mont. 101, 987 P.2d 1142. There, in keeping with the United States Supreme Court's opinion in *Griffith*, we overruled all of our prior decisions

which limited a new judicial rule of criminal procedure to prospective application. *Waters*, ¶ 20.

¶29 We also understand, however, that what follows from civil litigation is different in kind from the consequences inherent in a criminal prosecution and conviction. On many occasions we have noted the disruption that a new rule of law can bring to existing contracts and to other legal relationships. Therefore today we reaffirm our general rule that "[w]e give retroactive effect to judicial decisions," *Kleinhesselink v. Chevron, U.S.A.* (1996), 277 Mont. 158, 162, 920 P.2d 108, 111. We will, however, allow for an exception to that rule when faced with a truly compelling case for applying a new rule of law prospectively only.

¶30 The *Chevron* test is still viable as an exception to the rule of retroactivity. However, given that we wish prospective applications to be the exception, we will only invoke the *Chevron* exception when a party has satisfied *all three* of the *Chevron* factors. This is in keeping with our prior holdings. In the only two relevant decisions–that is, state law decisions where we prospectively applied a rule of law under the *Chevron* test–we concluded that all three of the factors weighed in favor of prospective application. *See Ereth*, ¶ 29 ("All three of these factors weigh in favor of nonretroactive application of this new rule in our jurisprudence."); *Seubert*, Order Clarifying Decision on Grant of Rehearing, 301 Mont. at 400, 13 P.3d at 375 (quoting *Holmberg v. Holmberg* (Minn. 1999), 588 N.W.2d 720, 726-27). Admittedly, we noted in *Poppleton v. Rollins* (1987), 226 Mont. 267, 271, 735 P.2d 286, 289, that only one factor need be met. However, that statement was dicta, since we determined that none of the *Chevron* factors were satisfied and thus that the decision in question should have retroactive effect. *Poppleton*, 226 Mont. at 271-72, 735 P.2d at 289-90.

¶31 Therefore, we conclude that, in keeping with our prior cases, all civil decisions of this court apply retroactively to cases pending on direct review or not yet final, unless all three of the *Chevron* factors are satisfied. For reasons of finality we also conclude that the retroactive effect of a decision

does not apply *ab initio*, that is, it does not apply to cases that became final or were settled prior to a decision's issuance.

II.     *Hardy* Does not Pass the *Chevron* Test

¶32     Having determined our rule of retroactivity, we must now ask whether our decision in *Hardy* satisfies all three *Chevron* factors. We conclude that it does not.

¶33     Since we conclude that *Hardy* does not satisfy the first *Chevron* factor, we need not address the other two. That factor is, again, that "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed." We dispose of this factor by citing *Hardy* itself. In *Hardy* we ruled that § 33-23-303, MCA, violated Article II, Section 17, of the Montana Constitution, and that it also violated the public policy of this state. We relied on *Bennett v. State Farm Mutual Auto Insurance Co.* (1993), 261 Mont. 386, 389-90, 862 P.2d 1146, 1148-49, where "we concluded that a provision that defeats coverage for which valuable consideration has been received violates Montana public policy. We held that UIM [underinsured motorist] coverage, by definition, is personal and portable. Therefore, a Montanan could reasonably expect coverage up to the aggregate limit of the separate policies when a separate premium for UIM coverage was charged for each." *Hardy*, ¶ 40 (citations omitted).

¶34     *Bennett*, along with the earlier case of *Chaffee v. U.S. Fidelity & Guaranty Co.* (1979), 181 Mont. 1, 591 P.2d 1102, indicated that anti-stacking policies were discouraged by this Court and contrary to public policy. These cases, coupled with others where we allowed stacking, *see, e.g.*, *Farmers Alliance Mut. Ins. Co. v. Holeman* (1996), 278 Mont. 274, 280-81, 924 P.2d 1315, 1319 (limiting the application of § 33-23-203, MCA), gave notice to the insured and insurers of this state that the statute was of questionable validity. We did not have to "overrule clear past precedent" in

order to declare that statute unconstitutional and against public policy.

¶35    Allstate argues that *Christensen v. Mountain West Farm Bureau Mutual Insurance Co.*, 2000 MT 378, 303 Mont. 493, 22 P.3d 624, and *Guiberson v. Hartford Casualty Insurance Co.* (1985), 217 Mont. 279, 704 P.2d 68, recognized the validity of § 33-23-303, MCA, and therefore muddied the legal waters, making the unconstitutionality of the statue not clearly foreseeable. The Class aptly points out, however, that the language in *Guiberson* cited by Allstate merely noted that the anti-stacking statute was not in effect when the action at issue arose. It said nothing regarding the statute's legality. Also, *Christensen* involved liability coverage, as opposed to personal and portable coverages—the class of coverage at issue in *Hardy*. We conclude that *Hardy* did not establish a new principle of law or decide an issue of first impression whose resolution was not clearly foreshadowed.

¶36    Amici in support of Allstate also argue that applying *Hardy* retroactively violates the Contracts Clause of the United States and Montana Constitutions. This issue, however, was not raised by the parties before the Court. An amicus cannot raise separate issues not raised by the parties. *Dep't of Health v. Lasorte* (1979), 182 Mont. 267, 596 P.2d 477. Accordingly, we decline to address this question.

## CONCLUSION

¶37    For the foregoing reasons we conclude that *Hardy* applies retroactively to require payment of stacked uninsured, underinsured motorist and medical payment insurance coverages in qualifying circumstances on open claims arising before its issuance. However, in the interests of finality, as discussed above, we limit this retroactivity to cases pending on direct review or not yet final.

/S/ W. WILLIAM LEAPHART

We concur:


/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JOHN WARNER

Justice Jim Rice dissenting.

¶38    I respectfully dissent.

¶39    Leaving for another day some of the Court's philosophical musings about the source of the law, in particular, that the law is that which is declared by judges, I nonetheless appreciate the Court's effort to meld our conflicting precedent into a practical rule. However, I cannot agree with the new rule because it is inconsistent with additional precedent which the Court neither overrules nor reconciles. Further, I believe this Court will need, as demonstrated recently in *Ereth*, the flexibility of the *Chevron* test on questions concerning the prospective application of our holdings. I would retain this test, which, as the Court notes, the United States Supreme Court specifically allows states to do.

¶40    Taking up the first prong of the *Chevron* test, which the Court today re-casts as the exception to its new rule of presumptive retroactive application, the Court rejects Allstate's argument that *Hardy* established a new principle of law, relying on our cases which "indicated that anti-stacking policies were discouraged by this Court and contrary to public policy" and which the Court asserts had given "notice to the insured and insurers of this state that the statute was of questionable validity." *See* ¶ 34. The Court fails to mention, however, that all of the cases it cites were decided *prior to* the enactment of the anti-stacking statute by the Legislature in 1997. Therefore, these prior holdings, including the "notice" the Court had provided about this state's public policy, had, by the time of the *Hardy* decision, been superseded by legislative enactment. Thus, the statutory prohibition on

19

stacking *was* the public policy of the state when Allstate issued the insurance policy herein, and we indeed overruled that public policy by declaring the statute unconstitutional.

¶41    The Court then faults Allstate's reliance on *Guiberson*'s application of the anti-stacking statute because that case "said nothing regarding the statute's legality." *See* ¶ 35. However, it did not need to.  "Statutes are presumed to be constitutional." *Lafournaise v. Montana Developmental Center*, 2003 MT 240, ¶ 26, 317 Mont. 283, ¶ 26, 77 P.3d 202, ¶ 26, citing *Romero v. J & J Tire* (1989), 238 Mont. 146, 149, 777 P.2d 292, 294.  Allstate was therefore justified in its reliance on a statute which had legislatively established this state's public policy with regard to stacking and which was presumptively constitutional.

¶42    Consequently, the new principle of law thus established in *Hardy* should, according to our precedent, be applied prospectively. *See Poppleton v. Rollins, Inc.* (1987), 226 Mont. 267, 271, 735 P.2d 286, 289 ("[A] rule of law will not be applied retroactively if *any* of the [*Chevron* factors] are present." (emphasis added)).  That being so, it is unnecessary for purposes of this dissent to discuss the other two *Chevron* factors.  The Court cites no authority in support of its new requirement that all three *Chevron* factors be met in order to apply a holding prospectively, and further, fails to acknowledge or overrule the contrary rule of *Poppleton*.  *Poppleton* is, of course, implicitly overruled by the Court's holding herein, along with our other cases which, wisely in my view, applied the *Chevron* test.


/S/ JIM RICE